22 CV 8300 (VSB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN GOLDSTEIN individually and on behalf of
CONGREGATION BNEI MATISYAHU, and MEIR
ORNSTEIN,

Plaintiffs,

- against -

KATHY HOCHUL, in her official capacity as Governor
of the State of New York; LETITIA JAMES, in her
official capacity as Attorney General of the State of New
York; KEECHANT SEWELL, in her official capacity as
Commissioner of the New York City Police Department;
LOUIS FALCO, III, in his official capacity as Rockland
County Sheriff; ERIC GONZALEZ, in his official
capacity as the District Attorney of Kings County; and
THOMAS WALSH, II, in his official capacity as the
District Attorney of Rockland County,

Defendants.

## CITY DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

***SYLVIA O. HINDS-RADIX***
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Nicholas R. Ciappetta*
*Tel: (212) 356-4036*

MICHELLE GOLDBERG-CAHN,
NICHOLAS R. CIAPPETTA,
SETH MOTEL,
Of Counsel.

October 14, 2022

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES………………..…………………………………………ii

PRELIMINARY STATEMENT………………………………………..…………………...1

ARGUMENT
    PLAINTIFFS ARE NOT ENTITLED TO THE EXTRAORDINARY AND DRASTIC
    REMEDY OF A PRELIMINARY INJUNCTION ................................................................2

POINT I
    PLAINTIFFS CANNOT DEMONSTRATE A SUBSTANTIAL LIKELIHOOD OF
    SUCCESS ON THE MERITS..........................................................................................4
        A.  The Challenged Provision does not violate the Free Exercise Clause. ........................4
        B.  Penal Law § 265.01-e(2)(c) is not overly broad..........................................................7
        C.  The Challenged Provision Does Not Violate the Second Amendment........................8
        1.  Plaintiffs lack standing to assert this pre-enforcement challenge. ...............................8
        2.  The Challenged Provision Does Not Violate the Second Amendment.......................11
        D.  The Challenged Provision is Not Unconstitutionally Vague. ....................................18
        E.  The Challenged Provision does not violate the Equal Protection Clause of the
            Fourteenth Amendment. ............................................................................................21

POINT II
    PLAINTIFFS WOULD NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF A
    PRELIMINARY INJUNCTION ............................................................................23

POINT III........................................................................................................................25
    AN INJUNCTION IS NOT IN THE PUBLIC INTEREST ................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Adam v. Barr,
792 F. App'x 20 (2d Cir. 2019) ................................................................................................9

Bd. of Trs. of State Univ. of N.Y. v. Fox,
492 U.S. 469 (1989)...................................................................................................................7

Betancourt v. Bloomberg,
448 F.3d 547 (2d Cir. 2006) ..............................................................................................18, 19

Bethel Sch. Dist. No. 403 v. Fraser,
478 U.S. 675 (1986)................................................................................................................13

Bill Johnson's Rests., Inc. v. NLRB,
461 U.S. 731 (1983)................................................................................................................14

Broadrick v. Oklahoma,
413 U.S. 601 (1973).................................................................................................................7

Cayuga Nation v. Tanner,
824 F.3d 321 (2d Cir. 2016) ....................................................................................................9

Church of Lukumi Babalu Aye v. City of Hialeah,
508 U.S. 520 (1993)..............................................................................................................4, 5

Citibank, N.A. v. Citytrust,
756 F.2d 273 (2d Cir. 1985) ...................................................................................................24

City of Cleburne v. Cleburne Living Ctr., Inc.,
473 U.S. 432 (1985)................................................................................................................22

City of Los Angeles v. Patel,
576 U.S. 409 (2015)................................................................................................................19

Clementine Co. LLC v. DeBlasio,
No. 21-7779, 2021 WL 5756398 (S.D.N.Y. Dec. 3, 2021).......................................................3

Copeland v. Vance,
893 F.3d 101 (2d Cir. 2018) ...............................................................................18, 19, 21, 22

District of Columbia v. Heller,
554 U.S. 570 (2008)..........................................................................................................passim

E. Tex. Baptist Univ. v. Burwell,
    807 F.3d 630 (5th Cir. 2015) ............................................................................13, 14

Eastchester Tobacco & Vape, Inc. v. Town of Eastchester,
    No. 21-6996, 2022 WL 3030491 (S.D.N.Y. Aug. 1, 2022) ......................................19

Expressions Hair Design v. Schneiderman,
    808 F.3d 118 (2d Cir. 2015) .................................................................................20

Frazee v. Ill. Dep't of Emp. Sec.,
    489 U.S. 829 (1989)...............................................................................................5

Frey v. Bruen,
    21-5334, 2022 WL 522478 (S.D.N.Y. Feb. 22, 2022) ...........................................10

Genco Importing, Inc. v. City of New York,
    552 F. Supp. 2d 371 (S.D.N.Y. 2008) ...................................................................19

GeorgiaCarry.Org, Inc. v. Georgia,
    687 F.3d 1244 (11th Cir. 2012) ..........................................................................5, 6

Gill v. Whitford,
    138 S. Ct. 1916 (2018)............................................................................................8

Grayned v. City of Rockford,
    408 U.S. 104 (1972)..............................................................................................18

Hedges v. Obama,
    724 F.3d 170 (2d Cir. 2013) ...................................................................................8

Helms Realty Corp. v. City of New York,
    320 F. Supp. 3d 526 (S.D.N.Y. 2018) ...................................................................18

Hessel v Christie's Inc.,
    399 F. Supp. 2d 506 (S.D.N.Y. 2005) ...................................................................24

Hill v. Colorado,
    530 U.S. 703 (2000)..........................................................................................18, 21

Hill v. State,
    53 Ga. 472 (1874) ................................................................................................16

Hoffman Estates v. Flipside, Hoffman Estates, Inc.,
    455 U.S. 489 (1982)..............................................................................................19

Jolly v. Coughlin,
    76 F.3d 468 (1996) ...............................................................................................23

Jones v. Schneiderman,
   974 F. Supp. 2d 322 (S.D.N.Y. 2013) .................................................................................18, 19

Kamerling v. Massanari,
   295 F.3d 206 (2d Cir. 2002) ...................................................................................................23

Lamothe v. Town of Oyster Bay,
   No. 08-2078, 2012 WL 6720781 (E.D.N.Y. Dec. 27, 2012)...................................................22

Levitan v. Ashcroft,
   281 F.3d 1313 (D.C. Cir. 2008)................................................................................................5

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992)..................................................................................................................9

Massachusetts v. Oakes,
   491 U.S. 576 (1989)..................................................................................................................7

McDuffy v. Sec'y of the Exec. Office of Educ.,
   615 N.E.2d 516 (Mass. 1993) .................................................................................................13

McGautha v. California,
   402 U.S. 183 (1971)................................................................................................................13

Members of the City Council of L.A. v. Taxpayers for Vincent,
   466 U.S. 789 (1984)..................................................................................................................8

Minzer v. Keegan,
   97-4077, 1997 WL 34842191 (E.D.N.Y. Sept. 22, 1997)..................................................24, 25

Moore v. Consol. Edison Co.,
   409 F.3d 506 (2d Cir. 2005) .....................................................................................................3

Munaf v. Geren,
   553 U.S. 674 (2008)..................................................................................................................3

N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,
   883 F.3d 32 (2d Cir. 2018) .......................................................................................................3

N.Y. State Rifle & Pistol Ass'n v. Cuomo,
   804 F.3d 242 (2d Cir. 2015) ...................................................................................................19

New York State Rifle & Pistol Ass'n, Inc. v. Bruen,
   142 S. Ct. 2111 (2022).....................................................................................................passim

New York v. Actavis PLC,
   787 F.3d 638 (2d Cir. 2015) .....................................................................................................3

Oneida Nation of N.Y. v. Cuomo,
   645 F.3d 154 (2d Cir. 2011) .................................................................................................3

Orthodox Jewish Coal. of Chestnut Ridge v. Village of Chestnut Ridge,
   No. 19-443, 2021 WL 3605041 (S.D.N.Y. Aug. 13, 2021) ...................................................22

Parker v. Hurley,
   514 F.3d 87 ............................................................................................................................5

Plaza Health Labs., Inc. v. Perales,
   878 F.2d 577 (2d Cir. 1989) .................................................................................................3

Polymer Tech. Corp. v. Mimran,
   37 F.3d 74 (2d Cir. 1994) .....................................................................................................3

Richard A. Leslie Co. v. Birdie, LLC,
   07-5933, 2007 WL 4245847 (S.D.N.Y. Nov. 26, 2007) ......................................................24

Rodriguez ex rel. Rodriguez v. DeBuono,
   175 F.3d 227 (1998) .............................................................................................................23

Sibley v. Watches,
   501 F. Supp. 3d 210 (W.D.N.Y. 2020).............................................................................8, 10

Susan B. Anthony List v. Driehaus,
   573 U.S. 149 (2014)..............................................................................................................9

United States v. Blarek,
   Nos. 98-1291, 98-1292, 1998 WL 907429 (2d Cir. Dec. 23, 1998)......................................21

United States v. Williams,
   553 U.S. 285 (2008)..........................................................................................................7, 19

W.D. v. Rockland County,
   521 F. Supp. 3d 358 (S.D.N.Y. 2021) .................................................................................22

Weight Watchers Int'l v. Luigino's, Inc.,
   423 F.3d 137 (2d Cir. 2005) ................................................................................................24

Wilson v. State,
   33 Ark. 557 (1878) ..............................................................................................................16

Yick Wo v. Hopkins,
   118 U.S. 356 (1886)..............................................................................................................13

**Statutes**

1901 Ariz. Acts 1252, Crimes and Punishments, § 387. ..............................................................17

1883 Mo. Laws 76 ................................................................................................17

1903 Mont. Laws 49, § 3 ......................................................................................17

New York Penal Law § 265.01-e(2)(c) ..........................................................*passim*

Penal Law § 265-01(e)(3)(e) ...................................................................................6

Penal Law § 265.01-e ........................................................................................1, 23

Penal Law § 400.00 .............................................................................................1, 8

1870 Tex. Gen. Laws 63 .......................................................................................16

1883 Wis. Sess. Laws 841 vol.2 ...........................................................................17

**Other Authorities**

Abram Chayes, <u>Commentaries: How Does the Constitution Establish Justice?</u>,
    101 Harv. L. Rev. 1026, 1026 (1988) ..........................................................13

Carina Bentata Gryting & Mark Anthony Frassetto, <u>NYSRPA v. Bruen and the
    Future of the Sensitive Places Doctrine: Rejecting the Ahistorical Government
    Security Approach</u>, 63 B.C. L. Rev. ..............................................................15

Darrell A.H. Miller, <u>Symposium: Constitutional Rights: Intersections, Synergies,
    and Conflicts: Constitutional Conflict and Sensitive Places</u> .......................14

David B. Kopel & Joseph G.S. Greenlee, <u>Article: The "Sensitive Places"
    Doctrine: Locational Limits on the Right to Bear Arms</u>, 13 Charleston L. Rev.
    205, 263 (2018).............................................................................................18

Michael A. Rebell, <u>Article: The Right to Comprehensive Educational
    Opportunity</u>, 47 Harv. C.R.-C.L. L. Rev. 47, 56 (2012) ...........................13

U.S. Const. amend XIV, § 1 ..................................................................................22

## PRELIMINARY STATEMENT

Plaintiffs seek the extraordinary and drastic remedy of a preliminary injunction to enjoin Defendants, including Keechant Sewell, Commissioner of the New York City Police Department ("NYPD"), and Kings County District Attorney Eric Gonzalez[1], from enforcing New York Penal Law ("Penal Law") § 265.01-e(2)(c) ("the Challenged Provision"), which, for all relevant purposes herein, became effective over one month ago on September 1, 2022.

The Challenged Provision is part of the comprehensive law known as the Concealed Carry Improvement Act ("CCIA") (S.51001/A.41001) that was enacted on July 1, 2022, during an extraordinary session of the New York State Legislature. The extraordinary session was called by New York State Governor Kathy Hochul to amend the State's firearm licensing laws following the United States Supreme Court's decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022), which struck down the State's requirement that an applicant seeking a license to publicly carry a firearm outside of the home or place of business must demonstrate "proper cause" to the applicable licensing official. In accord with Bruen, the CCIA eliminated the "proper cause" standard from Penal Law § 400.00 and added a number of other "narrow, objective, and definite standards" (Bruen, 142 S. Ct. at 2138 n.9) to guide licensing officials, ensure the safe use of concealed firearms, and promote public safety.

Penal Law § 265.01-e contains a list of "sensitive locations" where the possession of firearms, rifles, or shotguns is prohibited excepted in limited circumstances not relevant herein. Included in the list is "any place of worship or religious observation." Penal Law § 265.01-e(2)(c). Plaintiffs, self-described individuals of Jewish faith, seek to invalidate this provision because, as members of the Jewish community, they fear for their safety in light of

---

[1] Hereinafter, Commissioner Sewell and District Attorney Gonzalez will be collectively referred to as the "City Defendants."

recent violent attacks at Jewish places of worship.  Plaintiffs further allege that since Penal Law § 265.01-e(2)(c) prevents them from carrying concealed in their synagogues, they have reduced their attendance since the CCIA became effective.

Such anti-Semitic attacks are abhorrent and condemned in the strongest possible terms by the City Defendants.  Plaintiffs' apprehension and voluntary decision to reduce their synagogue attendance does not, however, establish a constitutional claim or entitle them to the extraordinary and drastic remedy of a preliminary injunction.  The Complaint and instant motion for a preliminary injunction[2] rely on illogical inferences and a mistaken understanding of the law.  Plaintiffs' non-secular preference cannot dictate policy for millions of New Yorkers – that is the function of the New York State Legislature and Governor, who have already acted.  Indeed, while Plaintiffs fear attending shul without the ability to carry concealed, other New Yorkers may be scared to frequent places of worship if firearms are *permitted* to be carried concealed therein by any member of the congregation or the public at large.

For these reasons, and the others that follow in this memorandum of law, the City Defendants request that the court deny Plaintiffs' motion for a preliminary injunction.

## ARGUMENT

### PLAINTIFFS ARE NOT ENTITLED TO THE EXTRAORDINARY AND DRASTIC REMEDY OF A PRELIMINARY INJUNCTION

There are different formulations of the standard for a preliminary injunction depending on the nature of the relief sought and against whom the relief is sought.  Under any formulation, the issuance of a preliminary injunction is considered a drastic and extraordinary

---

[2] This Court already denied Plaintiffs' application for a temporary restraining order.  <u>See</u> Docket Entry No. 21.

remedy, see Moore v. Consol. Edison Co., 409 F.3d 506, 510 (2d Cir. 2005), and "never awarded as of right." Munaf v. Geren, 553 U.S. 674, 689-90 (2008).

To obtain preliminary injunctive relief in a federal case, plaintiff must typically establish (a) irreparable harm; and (b) "either (1) a likelihood of success on the merits of its case, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly" in its favor. See e.g., Polymer Tech. Corp. v. Mimran, 37 F.3d 74, 77-78 (2d Cir. 1994). Additionally, the moving party is required to show that the preliminary injunction is in the public interest. See Oneida Nation of N.Y. v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011); see also Clementine Co. LLC v. DeBlasio, No. 21-7779, 2021 WL 5756398, at *5 (S.D.N.Y. Dec. 3, 2021). But where, as here, "the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme," a preliminary injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard. Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989). Further, if the preliminary injunction is mandatory, rather than prohibitory, in nature, a heightened standard is applied and the movant must make a "clear" or "substantial" showing of likelihood of success on the merits and a "strong" showing of irreparable harm, in addition to the public interest element. See New York v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015).

As stated above, the CCIA, including Penal Law § 265.01-e(2)(c), became effective on September 1, 2022, and, as such, it is presently the law of New York State. Plaintiffs' Complaint seeks to enjoin an operative law. An injunction that seeks to alter the status quo is considered mandatory in nature. See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc., 883 F.3d 32, 36 (2d Cir. 2018). As Plaintiffs seek to prevent the continued

3

enforcement of a law that took effect weeks ago, the court should treat this request as a motion for a mandatory injunction.

Hence, the relevant standard should be as follows:  Plaintiffs must demonstrate a "clear" or "substantial" likelihood of success on the merits and a "strong" showing of irreparable harm, in addition to showing that the preliminary injunction is in the public interest.[3]

### POINT I

### PLAINTIFFS CANNOT DEMONSTRATE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

**A.     The Challenged Provision does not violate the Free Exercise Clause.**

The Free Exercise Clause of the First Amendment of the United States Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof;…"   Plaintiffs allege that the Free Exercise Clause is violated because the Challenged Provision is not neutral or generally applicable.  See Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction ("Plaintiffs' Memo") at 23.

The fallacy with Plaintiffs' argument is that they skip over the threshold question of whether their free exercise rights are even interfered with.  In other words, before the First Amendment is even implicated, a plaintiff must allege a burden on a sincerely held *religious* belief.  The centrality of this threshold issue is evident from the Supreme Court's decision in Church of Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520 (1993).  While most of the Court's opinion focuses upon the questions of neutrality and general applicability, and then the application of strict scrutiny, the Court first established that animal sacrifice was an integral part

---

[3] Even if the court deems Plaintiffs' motion as seeking a prohibitory, rather than mandatory, injunction, they cannot satisfy the non-heightened standard.

of the plaintiff's religion.  See id. at 531.  "Neither the city nor the courts below, moreover, have questioned the sincerity of petitioners' professed desire to conduct animal sacrifices for religious reasons. We must consider petitioners' First Amendment claim."  Id.  Thus, Plaintiffs cannot jump straight to the applicable level of constitutional scrutiny without this initial analysis.  See Levitan v. Ashcroft, 281 F.3d 1313, 1320 (D.C. Cir. 2008) (discussing the threshold requirement that a litigant's beliefs must be sincere and of a religious nature); Parker v. Hurley, 514 F.3d 87, 99 (stating that the threshold requirement is whether free exercise is even interfered with); GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1256 (11th Cir. 2012) ("[B]efore a court even considers whether a law is subject to the rational basis test or, alternatively, strict scrutiny – a court must be able to determine that the protection of the Free Exercise Clause is triggered.").

Plaintiffs cannot clear this initial pleading hurdle, and, as such, their free exercise rights are not infringed, and this court's review need not, and should not, progress further. Plaintiffs, members of the Jewish faith, do not allege that carrying a concealed firearm is a central tenet or important practice of their religion.  Goldstein and Ornstein allege that they attend synagogue less frequently due to fear for their safety and the safety of others, but this is their own personal choice.  Goldstein and Ornstein simply feel more comfortable attending synagogue if a member of the congregation is carrying a concealed firearm.  City Defendants cast no judgment on their personal beliefs – though as argued in the Preliminary Statement, other individuals (whether members of other religions or the Jewish faith), may feel the exact opposite way and prefer to worship without the presence of guns in their house of worship.  But Plaintiffs' secular, personal preferences are without constitutional significance in the absence of an allegation that the belief is religious in nature.  "There is no doubt that '[o]nly beliefs rooted in religion are protected by the Free Exercise Clause.'  Purely secular views do not suffice."  Frazee

v. Ill. Dep't of Emp. Sec., 489 U.S. 829, 833 (1989) (quoting Thomas v. Review Bd. of Ind. Emp't. Sec. Div., 450 U.S. 707, 713 (1981)).

In a nearly identical case, the Eleventh Circuit upheld a Georgia statute banning the carry of a weapon while in a place of worship. See generally GeorgiaCarry.Org, 687 F.3d at 1256. In GeorgiaCarry.Org, like here, plaintiffs alleged that they would like to carry a handgun for protection of themselves, their family, and the house of worship. See id. at 1258. Plaintiffs also alleged that the Georgia law interfered with the free exercise of religion "by prohibiting them from engaging in activities in a place of worship when those activities are generally permitted throughout the State." Id. The Court wisely rejected this argument and found that plaintiffs' desire to carry a firearm for self-defense purposes was a "personal preference, motivated by a secular purpose" for which no First Amendment protection lies. Id. The Eleventh Circuit's reasoning was sound as it was based on straightforward Free Exercise Clause jurisprudence. This court should follow GeorgiaCarry.Org and reject Plaintiffs' similar claim.[4]

To the extent Plaintiffs are arguing that the Challenged Provision singles out religious practice or religious conduct for differential treatment, they are incorrect. See Plaintiffs' Memo at 23. Houses of worship are treated similarly to a whole host of properties that share similar characteristics. The CCIA's definition of "sensitive locations" contains a number of places that are open to the general public to congregate for extended periods of time. For example, this list includes courthouses, libraries, zoos, parks, stadiums, museums, establishments licensed to serve alcohol (such as bars and most restaurants), amusement parks, banquet halls and theaters. For these locations, like houses of worship, the State's elected officials established

---

[4] It is important to note that the CCIA does contain an exception for security guards. See Penal Law § 265-01(e)(3)(e). Thus, the synagogues at issue herein could contract for armed guards to ease the safety concerns of their worshipers, as many houses of worship do. That the synagogues may not have the financial wherewithal (See Plaintiffs' Memo at 11) likewise does not support a free exercise claim.

blanket bans on the possession of firearms, with limited exceptions, rather than leaving the decision in the hands of each property owner or proprietor.  As such, Plaintiffs cannot plausibly argue that houses of worship were targeted by the State because of their religious character and the religious activity conducted therein.

**B.      Penal Law § 265.01-e(2)(c) is not overly broad.**

Plaintiffs fail to adequately develop their overbreadth analysis and merely cite to general case law without any analysis or explanation as to how it applies in this case.  See Plaintiffs' Memo at 24.  Indeed it appears from their moving papers that Plaintiffs lack an adequate understanding as to the First Amendment overbreadth doctrine.

The overbreadth doctrine represents an exception to traditional rules of standing in the First Amendment context so that a litigant can argue that a challenged statute is unconstitutionally applied to some hypothetical third party not presently before the court.  See Broadrick v. Oklahoma, 413 U.S. 601, 610-11 (1973).  This allows a litigant to "benefit" from a statute's unconstitutional application to someone else.  See Bd. of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 483 (1989).  The doctrine is based on the concept that an overly broad statute might chill the exercise of constitutionally protected expression.  See Massachusetts v. Oakes, 491 U.S. 576, 581 (1989).  Since an overbroad statute is subject to facial invalidation, including any perfectly constitutional applications of the law, it is considered to be "strong medicine" that should be applied "sparingly and only as a last resort." Broadrick, 413 U.S. at 613.

To cabin the potency of the doctrine, the Supreme Court has held that a First Amendment facial overbreadth challenge may succeed only where the statute at issue curtails a "substantial" amount of protected speech.  See United States v. Williams, 553 U.S. 285, 292 (2008).  Plaintiffs' conclusory argument fails to identify *any* constitutionally protected expression of parties not before the court.  Rather, they are simply referring to "those who

7

engage in acts of religious observance anywhere while possessing an otherwise lawful firearm...." Plaintiffs' Memo at 24. However, this is the same conduct that serves as the basis for their own First Amendment free exercise claim. See Members of the City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 802-03 (1984) (rejecting an overbreadth challenge where the plaintiffs "failed to identify any significant difference between their claim that the ordinance is invalid on overbreadth grounds and their claim that it is unconstitutional when applied to [them]"). Moreover, as discussed above, the Challenged Provision does not punish any protected religious activity[5] – it only regulates the conduct of carrying a concealed firearm in a place of worship, which is not religious in nature. See Sibley v. Watches, 501 F. Supp. 3d 210, 223-24 (W.D.N.Y. 2020) (stating that Penal Law § 400.00 "regulates handgun possession, not speech"). Thus, no further analysis of Plaintiffs' First Amendment overbreadth claim is required.

## C.   The Challenged Provision Does Not Violate the Second Amendment.

### 1.   Plaintiffs lack standing to assert this pre-enforcement challenge.

Article III of the United States Constitution serves as a gatekeeper to invoking the jurisdiction of the federal courts. See Hedges v. Obama, 724 F.3d 170, 188 (2d Cir. 2013). The doctrine of standing ensures that a plaintiff has a personal stake in the outcome of the litigation. This ensures that federal courts hear real controversies, and not generalized grievances about government. See Gill v. Whitford, 138 S. Ct. 1916, 1929 (2018). To establish standing, a plaintiff must satisfy three elements. "First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged

---

[5] Plaintiffs do not identify any case in which a court applied the First Amendment overbreadth doctrine to religious activity rather than speech.

action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)(internal quotation marks and citations omitted).

Goldstein and Ornstein assert a pre-enforcement challenge to a criminal statute. While such claims are cognizable under Article III, see Cayuga Nation v. Tanner, 824 F.3d 321, 331 (2d Cir. 2016), the threatened injury must be "sufficiently imminent." Adam v. Barr, 792 F. App'x 20, 21 (2d Cir. 2019) (citing Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014)). The "sufficiently imminent" requirement can be met with plausible allegations that the plaintiff intends to "engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Susan B. Anthony List, 573 U.S. at 159-60 (2014) (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979).

The Complaint and the Plaintiffs' motion papers are seriously devoid of allegations to meet these standards.[6] There are simply no allegations that Goldstein has any concrete plans to violate Penal Law § 265.01-e(2)(c). If anything, the Complaint and motion papers confirm that Goldstein plans to *comply* with Penal Law 265.01-e(2)(c) by not carrying a firearm concealed at Congregation Bnei Matisyahu, or another place of worship, and that his refusal to violate the law is the reason for his personal decision to decrease attendance at the synagogue. See Complaint at ¶¶ 53-55; see also Declaration of Steven Goldstein ("Goldstein

---

[6] Congregation Bnei Matisyahu is not a proper plaintiff in this action and City Defendants are not responding to claims by that improper entity. While the caption states that Goldstein is appearing "individually and *on behalf of* CONGREGATION BNEI MATISYAHU," there is no legal support for the proposition than an individual can assert any rights held by a religious entity or other organization. (Emphasis added).

Declaration") at ¶ 17-18, 22, 24 (stating that if the Challenged Provision did not exist, "Bnei Matisyahu would allow me to *resume* carrying my concealed handgun on its property")(emphasis added); Plaintiffs' Memo at 10-12.  As for the second prong, there are no facts in the Amended Complaint to show a credible threat of prosecution, even assuming Goldstein intended to engage in proscribed conduct.  Specifically, there are no allegations that Goldstein has been prosecuted in the past or has been threatened with enforcement of the Challenged Provision.  The mere existence of the Challenged Provision does not mean that Goldstein will be arrested, charged and prosecuted.  See Frey v. Bruen, 21-5334, 2022 WL 522478, at *5 (S.D.N.Y. Feb. 22, 2022); Sibley, 501 F. Supp. 3d at 223.

With respect to Ornstein, the threatened injury is even more conjectural.  While Ornstein does state that he intends to continue carrying a concealed firearm while engaging in acts of religious observation, see Declaration of Meir Ornstein ("Ornstein Declaration") at ¶ 23, there are likewise no allegations that he faces a credible threat of prosecution, especially from the City Defendants.  According to the Complaint, and his declaration, Ornstein is a resident of Rockland County and attends services at a synagogue called Congregation Zemack David of Dinev, also located in Rockland County.  See Complaint at ¶¶ 57, 59; see also Ornstein Declaration at ¶¶ 1, 5.  Obviously, Commissioner Sewell would not have jurisdiction to arrest Ornstein for carrying a firearm concealed at Congregation Zemack David of Dinev, or any other place of worship in Rockland County, and likewise, District Attorney Gonzalez could not prosecute Ornstein for an arrest based on such conduct at Congregation Zemack David of Dinev, or any other place of worship in Rockland County.  Further, Ornstein does not allege that he attends shul at any location in Brooklyn or the other boroughs in the City of New York.  Nor does he state that he intends to carry his firearm concealed in any place of religious observation

whatsoever in Brooklyn or the other boroughs in the City of New York. Thus, even if a credible

threat of prosecution existed, it could not exist from either of the City Defendants.

### 2. The Challenged Provision Does Not Violate the Second Amendment.

In Bruen, the Supreme Court continued the development of modern Second

Amendment jurisprudence by declaring that there is a constitutional right to carry a firearm in

public for purposes of self-defense. See Bruen, 142 S. Ct. at 2156. The Court also dispensed

with the two-part means-end scrutiny (whether intermediate or strict scrutiny) applied by many

of the federal circuits, and clarified that the Second Amendment "demands a test rooted in the

Second Amendment's text, as informed by history." Id. at 2127. The new test formulated by the

Court is as follows: "When the Second Amendment's plain text covers an individual's conduct,

the Constitution presumptively protects that conduct. The government must then justify its

regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm

regulation. Only then may a court conclude that the individual's conduct falls outside the Second

Amendment's unqualified command." Id. at 2129-30 (internal quotation marks and citations

omitted). For purposes of analyzing the "Nation's historical tradition of firearm regulation," the

Court advised that the relevant time periods are the ratification of the Second Amendment and

Fourteenth Amendment. See id. at 2137.

Notwithstanding this decision, the Supreme Court made it clear that the Second

Amendment is not an unlimited right and it is not a right "to keep and carry any weapon

whatsoever in any manner whatsoever and for whatever purpose." Id. at 2128 (quoting District

of Columbia v. Heller, 554 U.S. 570, 626 (2008)). Further, the Constitution leaves a "variety of

tools" to address the problem of gun violence. See Heller, 554 U.S. at 636. In fact, Heller and

Bruen identified a sample of "longstanding," "presumptively lawful regulatory measures."

Heller, 554 U.S. at 626-27 n.26; Bruen, 142 S. Ct. at 2133-34, 2138 n.9, 2150, 2162 (Kavanaugh, J., concurring).

Included in the above list, and relevant to the instant matter, are laws prohibiting the carrying of firearms in "sensitive places." Heller and Bruen together identified "sensitive places" *such as* schools, government buildings, legislative assemblies, polling places, and courthouses. Heller, 554 U.S. at 626; Bruen, 142 S. Ct. at 2133. It is not by accident that both Heller and Bruen use the phrase "such as" in their discussion of "sensitive places." In neither case was the Court attempting to "comprehensively define 'sensitive places.'" Bruen, 142 S. Ct. at 2133. Rather, the Court was simply providing a list of well-settled "sensitive places," and "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible." Id. Thus, the Supreme Court, in stating that its list of "sensitive places" was not exhaustive, and in permitting *both* new *and* analogous sensitive places, provided a significant degree of latitude to municipalities. Further, the only constraint on such latitude was the caution not to expand "the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement…." Id. at 2134. Places of worship are analogous to the non-exhaustive list of "sensitive locations" identified by the Court in Heller and Bruen; thus, the court can resolve this issue without exploring history at the time of the ratification of the Second and Fourteenth Amendments. Notwithstanding this argument, the historical support is so strong that the government can show the Challenged Provision is consistent with the tradition of firearm regulation in this country.

The locations identified by Heller and Bruen are examples of institutions that are vital to our nation's founding and continued endurance. Education and schools, for example, are

vital to participation in a representative democracy, a system of government uniquely American. See Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 681 (1986) (quoting historians that the role of public education is to "prepare pupils for citizenship in the Republic"). "Education has always held a primacy of place as the central public institution of the American nation." Michael A. Rebell, Article: The Right to Comprehensive Educational Opportunity, 47 Harv. C.R.-C.L. L. Rev. 47, 56 (2012). Our country's founders were also keenly aware of the significance of public education. For example, "[t]here is substantial evidence that John Adams believed that widespread public education was integral to the very existence of a republican government." McDuffy v. Sec'y of the Exec. Office of Educ., 615 N.E.2d 516, 535 (Mass. 1993); see also Rebell, supra, at 56-57. Similarly, the right to vote is considered a "fundamental political right, because preservative of all rights." Yick Wo v. Hopkins, 118 U.S. 356, 370 (1886). In Reynolds v. Sims, the Supreme Court stated that, "Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights...." 377 U.S. 533, 561-62 (1964). "Justice" is one of the goals set forth in the Preamble to the United States Constitution, see McGautha v. California, 402 U.S. 183, 246 n.17 (1971), and courts, in particular the federal judiciary, may be considered "the institutional custodian of justice in our system." See Abram Chayes, Commentaries: How Does the Constitution Establish Justice?, 101 Harv. L. Rev. 1026, 1026 (1988). Undoubtedly, religion stands alongside education, voting, and access to the courts as one of the pillars of our country's establishment. For example, in his farewell address to the people of the United States, President George Washington stated, "Of all the dispositions and habits which lead to political prosperity, religion and morality are indispensable supports." E. Tex. Baptist Univ. v. Burwell, 807 F.3d

630, 632 n.1 (5th Cir. 2015).  Likewise, John Adams declared that religion and morality are essential to freedom.  Id.

   The exercise in the above paragraph demonstrates that the locations on the Heller and Bruen non-exclusive list of "sensitive places" are significant not merely for the physical buildings and spaces themselves, but rather for the ideals that they represent and the activities conducted therein.  There also appears to be something inviolable about the locations and the possession of concealed firearms by anyone and everyone who enters would be inconsistent with their venerated nature.  Houses of worship fit comfortably into this analysis as they too command respect and reverence and are generally open to the public.  As with the other locations identified by the Court, the presence of firearms in a house of worship would be incompatible with the purpose of the institution.  The case for treating houses of worship as "sensitive places" is even more compelling given their  reputation as a place of peace and a sanctuary from the world.

   Beyond the fact that each of these sensitive places serve as pillars of our society, they share another important characteristic – they are institutions that facilitate and advance constitutional rights.  See generally Darrell A.H. Miller, Symposium:  Constitutional Rights: Intersections, Synergies, and Conflicts:  Constitutional Conflict and Sensitive Places, 28 Wm. & Mary Bill of Rts. J. 459 (2019). Educational institutions foster the First Amendment's protection of speech as classrooms serve as the "marketplace of ideas."  Id. at 471 (quoting Keyishian v. Bd. of Regents of Univ. of State of N.Y., 385 U.S. 589, 603 (1967)).  To cite another example, polling places are "Fifth, Fourteenth, and Fifteenth Amendment institutions."  Id. at 472. Courthouses similarly promote the First Amendment's right to petition the government for the redress of grievances.  See Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 741 (1983) (stating that "the right of access to the courts is an aspect of the First Amendment right to

petition the government for the redress of grievances"). To close the loop on this reasoning, according to Miller, private firearms have traditionally been excluded from these locations because they can undermine the advancement of other kinds of constitutional rights. See Miller, supra, at 466. Under this analysis, houses of worship find a natural home as a "sensitive place" since they support the First Amendment's guarantee of religious freedom. Id.

It is just this sort of "reasoning by analogy" that the Court endorsed in Bruen. See Bruen, 142 S. Ct. at 2132. And, in this case, that "reasoning by analogy" supports the addition of houses of worship to the non-exhaustive list of "sensitive places" identified by the Supreme Court in Heller and Bruen.[7]

The inclusion of places of worship in the list of "sensitive places" finds further support in the annals of history. "[I]t is fair to say that the instinct to protect houses of worship from weapons – rather than with weapons – is long and well-established." Miller, supra, at 468. Indeed, this instinct dates back to Henry IV and Henry VIII prohibiting the bearing of arms in churches in 1402 and 1534, respectively. See id. at 467-468 n.91. Plaintiffs identify two states (Virginia and Georgia) that for a period of time actually required arms to be brought to church, see Plaintiffs' Memo at 21-22, but two examples does not make a tradition, and beginning in the mid-nineteenth century (the Reconstruction era[8]) the banning of firearms in houses of worship became a trend. See Miller, supra, at 468. In 1870, Georgia *repealed* the requirement to carry guns in church and *prohibited* the possession of pistols and revolvers in any house of worship.

---

[7] Bruen does not require a "historical twin;" rather, a "well-established and representative historical *analogue*" will suffice. Bruen, 142 S. Ct. at 2133.

[8] Some scholars have argued that the Reconstruction era is the most relevant period for determining the validity of state laws. See Carina Bentata Gryting & Mark Anthony Frassetto, NYSRPA v. Bruen and the Future of the Sensitive Places Doctrine:  Rejecting the Ahistorical Government Security Approach, 63 B.C. L. Rev. E. Supp. 60, 64 n.22 (2022).

See id. at 468 n.97.[9]  That same year Texas adopted a law banning all firearms in numerous

locations, including church and religious assemblies, and made such an act a misdemeanor.  See

1870 Tex. Gen. Laws 63, Chap. 46, § 1.[10]  Virginia followed suit in 1877.  See 1877 Va. Acts

305, § 21.[11]  Over the next two years, this trend developed into a tradition with Missouri[12],

Wisconsin[13], Oklahoma[14], Arizona[15], Montana[16] enacting similar legislation.

---

[9] Indeed, by 1874, the notion of arms in houses of worship was considered by the Georgia Supreme Court to be utterly inconceivable.  See Hill v. State, 53 Ga. 472, 475 (1874) ("The practice of carrying arms at courts, elections and places of worship, etc., is a thing so improper in itself, so shocking to all sense of propriety, so wholly useless and full of evil, that it would be strange if the framers of the constitution have used words broad enough to give it a constitutional guarantee.").

Several years later, the Arkansas Supreme Court noted in passing that, "No doubt in time of peace, persons might be prohibited from wearing war arms to places of public worship…."  Wilson v. State, 33 Ark. 557, 560 (1878).

[10] "**That if any person shall go into any church or religious assembly**, any school-room or other place where persons are assembled for educational, literary, or scientific purposes, or into a ball room, social party, or other social gathering, composed of ladies and gentleman, or to any election precinct on the day or days of any election, where any portion of the people of this state are collected to vote at any election, or to any other place where people may be assembled to muster or to perform any other public duty, or any other public assembly, and shall have about his person a bowie-knife, dirk, or butcher-knife, or fire-arms, whether known as a six shooter, gun, or pistol of any kind, **such person so offending shall be deemed guilty of a misdemeanor,** and on conviction thereof shall be fined in a sum not less than fifty or more than five hundred dollars…." (emphasis added).

[11] "If any person carrying any gun, pistol, bowie-knife, dagger, or other dangerous weapon, **to any place of worship while a meeting for religious purposes is being held at such place**, or without good and sufficient cause therefor, shall carry any such weapon on Sunday at any place other than his own premises, *shall be fined not less than twenty dollars*. **If any offense under this section be committed at a place of religious worship, the offender may be arrested on the order of a conservator of the peace, without warrant, and held until warrant can be obtained, but not exceeding three hours."**

[12] "If any person shall carry concealed, upon or about his person, any deadly or dangerous weapon, **or shall go into any church or place where people have assembled for religious worship**, or into any school room or place where people are assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose other than for militia drill or meetings called under the militia law of this state, having upon or about his person any kind of fire arms, bowie knife, dirk, dagger, slung-shot, or other deadly weapon, or shall in the presence of one or more persons shall exhibit any such weapon in a rude, angry or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks, or shall directly or indirectly sell or deliver, loan or barter to any minor any such weapon, without the consent of the parent or guardian of such minor, **he shall, upon conviction, be punished by a fine of not less than**

This review of history indicates strong support for the notion that a house of worship is a sensitive place.  Indeed, the support is far more substantial than the two contrary examples cited by Plaintiffs, which, in comparison, seem like outliers.  Further, while the Supreme Court referred to laws forbidding the carrying of firearms in schools as "longstanding,"

---

twenty-five nor more than two hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment." 1883 Mo. Laws 76 (emphasis added).

[13] "**Any person who shall be** found **in or upon any** street, alley or public ground within said city, or within any saloon, shop, store, grocery, hall, **church**, school house, barn, building or other place within said city . . . shall use toward or in the presence of another, violent or insulting language or be guilty of any breach of the peace, or firing of any gun or pistol, or fighting or threatening to fight, shall be **deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by fine not exceeding twenty-five ($25) dollars and costs of prosecution, or imprisonment in the county jail not more than ninety days, or both**, in the discretion of the court." 1883 Wis. Sess. Laws 841 vol.2 (emphasis added).

[14] "**It shall be unlawful for any person, except a peace officer, to carry into any church or religious assembly**, any school room or other place where persons are assembled for public worship, for amusement, or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into any ball room, or to any party or social gathering, or to any election, or to any place where intoxicating liquors are sold, or to any political convention, or to any other public assembly, any of the weapons designated in sections one and two of this article." 1890 Okla. Laws 495, art. 47, § 7 (emphasis added).  Sections one and two of the article refer to pistols and revolvers.  See 1890 Okla. Laws 495, art. 47, §§ 1, 2.

[15] "**If any person shall go into church or religious assembly**, any school room, or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show or public exhibition of any kind or into a ball room, social party or social gathering, to any election precinct, on the day or days of any election, where any portion of the people of this territory are collected to vote at any election, or to any other place where people may be assembled to minister, or to perform any other public duty, or to any other public assembly, and shall have or carry about his person a pistol or other firearm, dirk, dagger, slung-shot, sword-cane, spear, brass knuckles, bowie knife or any other kind of knife manufactured and sold for the purposes of offense or defense, **he shall be punished by a fine not less than fifty or more than five hundred dollars, and shall forfeit to the county the weapon or weapons so found on his person**." 1901 Ariz. Acts 1252, Crimes and Punishments, § 387 (emphasis added).

[16] "**If any person shall go into an church or religions assembly**, any school room or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show, or public exhibition of any kind, or into a ball room, social party, or social gathering, or to any election precinct or any place of registration, on the day or days of any election or registration, where any portion of the people of the State are collected to register or vote at any election, or to any other place where people may be assembled to perform any public duty, or at any public assembly, and shall have or carry concealed or partially concealed about his person a pistol or other firearm, dirk, dagger, slung shot, sword cane, knuckles, or bowie knife, **he shall be punished by a fine of not less than fifty nor more than five hundred dollars**." 1903 Mont. Laws 49, § 3 (emphasis added).

Heller, 554 U.S. at 626, support for the addition of houses of worship to the list of "sensitive places" is actually far more robust.  See David B. Kopel & Joseph G.S. Greenlee, Article:  The "Sensitive Places" Doctrine:  Locational Limits on the Right to Bear Arms, 13 Charleston L. Rev. 205, 263 (2018) (noting that laws banning guns in schools "came in the later part of the twentieth century").[17]  Accordingly, the government can demonstrate that Penal Law § 265.01-e(2)(c) is consistent with the Nation's historical tradition of firearm regulation.

**D.    The Challenged Provision is Not Unconstitutionally Vague.**

The "void-for-vagueness" doctrine is a component of the Fourteenth Amendment's due process clause.  See Copeland v. Vance, 893 F.3d 101, 110 (2d Cir. 2018).  There are two components of the void-for-vagueness doctrine, either of which could render a statute impermissibly vague.  See Helms Realty Corp. v. City of New York, 320 F. Supp. 3d 526, 533 (S.D.N.Y. 2018).  "[A statute can be vague f]irst, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000).  The first ground requires fair or adequate notice of the prohibited conduct, while the latter ground "is concerned with providing explicit standards for officials who enforce the law, thereby avoiding 'resolution on an *ad hoc* and subjective basis.'"    Jones v. Schneiderman, 974 F. Supp. 2d 322, 340 (S.D.N.Y. 2013) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)).  Courts do not require "mathematical certainty" or "meticulous specificity" from statutes, and the degree of precision turns on the nature of the law.  Grayned, 408 U.S. at 110; see also Betancourt v. Bloomberg, 448 F.3d 547, 552 (2d Cir. 2006).  For example, economic regulations are subject to a more permissive test, while laws restricting the

---

[17] The Supreme Court in Bruen cited approvingly to this law review article for authority.  See Bruen, 142 S. Ct. at 2133.

exercise of constitutional rights require greater scrutiny.  See Betancourt, 448 F.3d at 552-53.

Further, "perfect clarity and precise guidance have never been required even of regulations that

restrict expressive activity."  United States v. Williams, 553 U.S. 285, 304 (2008) (quoting Ward

v. Rock Against Racism, 491 U.S. 781, 794 (1989)).

Plaintiffs assert both facial and as-applied challenges to Penal Law § 265.01-

e(2)(c).  "A facial challenge is an attack on a statute itself as opposed to a particular application."

City of Los Angeles v. Patel, 576 U.S. 409, 415 (2015).  An as-applied challenge, in contrast,

evaluates whether the statute can be constitutionally applied to the "challenger's individual

circumstances."  Copeland, 893 F.3d at 110.  Plaintiffs make no attempt to differentiate their

facial and as-applied claims.  However, as Plaintiffs do not allege any enforcement action

pursuant to the Challenged Provision, the Complaint should be read as pleading a facial rather

than an as-applied challenge.  See N.Y. State Rifle & Pistol Ass'n v. Cuomo,  804 F.3d 242, 265

(2d Cir. 2015).  Moreover, facial vagueness challenges are *not* permitted outside of the First

Amendment context.  See Eastchester Tobacco & Vape, Inc. v. Town of Eastchester, No. 21-

6996, 2022 WL 3030491, at *6 (S.D.N.Y. Aug. 1, 2022); see also Genco Importing, Inc. v. City

of New York, 552 F. Supp. 2d 371, 384 (S.D.N.Y. 2008); Jones, 974 F. Supp. 2d at 345.  As

discussed above, even though Plaintiffs asset a violation of their First Amendment rights under

the Free Exercise Clause, the Challenged Provision only implicates secular conduct, not religious

worship.  Thus, City Defendants submit that the applicable case law forecloses Plaintiffs' "void-

for-vagueness" challenge, whether construed as a facial or as-applied attack, and no further

analysis is necessary.

In any event, a facial challenge would be doomed to failure since such a challenge

requires the movant to demonstrate that the statute is vague "in all of its applications."  Hoffman

Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982). "[I]f a statute has a core meaning that can be reasonably understood, then it may validly be applied to conduct within the core meaning, and the possibility of such a valid application necessarily means that the statute is not vague on its face." Expressions Hair Design v. Schneiderman, 808 F.3d 118, 142 (2d Cir. 2015). Penal Law § 265.01-e(2)(c) has a core meaning that can be readily understood: the possession of firearms is prohibited in houses of religious worship such as churches, synagogues, mosques, temples, and the like. In fact, Plaintiffs understand this "core meaning" of the Challenged Provision. Plaintiff Goldstein describes Bnei Matisyahu as a "*place of worship* as well as a *place of religious observation*." Goldstein Declaration at ¶ 17. (emphasis added). Likewise, Plaintiff Ornstein calls Zemach David "a *place of worship* as well as a *place of religious observation*." Ornstein Declaration at ¶ 9. (emphasis added). And both Goldstein and Ornstein are aware that Penal Law § 265.01-e(2)(c) therefore forbids them from carrying firearms at Bnei Matisyahu and Zemach David. See Goldstein Declaration at ¶ 17; Ornstein Declaration at ¶ 9. Ornstein is also aware that the Challenged Provision prohibits him from carrying a handgun on "the property of any shul for that matter." Ornstein Declaration at ¶ 11. Thus, Plaintiffs understand the "core" of what the Challenged Provision prohibits and how to modify their conduct to comply with the law. This eviscerates any facial challenge that they could theoretically assert.

        To establish facial vagueness, Plaintiffs stretch the Challenged Provision well beyond its natural meaning. The Complaint states that "[a]s observant Jews, nearly every location is a place of religious observation for plaintiffs Goldstein and Ornstein." Complaint at ¶ 111; see also Ornstein Declaration at ¶ 15. City Defendants, of course, do not dispute that a person's faith may require them to pray or observe at times and places other than regularly

scheduled religious services at a traditional house of worship.  But City Defendants do not agree that a secular location would then automatically transform into a "place of religious observation."  For example, if Ornstein was at his place of employment during the time of a required afternoon prayer, said workplace would not be considered a house of worship or a place of religious observation.  Similarly, if a student needed to recite a daily prayer while at a public school, the school does not become a place of worship as well as an educational institution by virtue of a single student observing their faith; indeed, a contrary result would be illogical and raise serious Establishment Clause concerns.  While the individuals in these examples might be performing acts consistent with their religion, the location itself does not lose its essential character and become a place of worship under Penal Law § 265.01-e(2)(c).

The "core meaning" of Penal Law § 265.01-e(2)(c) is clear and Plaintiffs' outlier examples cannot introduce the type of imprecision into the law that would render it impermissibly vague.  See Hill, 530 U.S. at 733 (2000); see also United States v. Blarek, Nos. 98-1291, 98-1292, 1998 WL 907429, at *3 (2d Cir. Dec. 23, 1998).   For all these reasons, the Court should reject Plaintiffs' vagueness claims, both facial and as-applied.[18]

**E.      The Challenged Provision does not violate the Equal Protection Clause of the Fourteenth Amendment.**

Finally, Plaintiffs assert a claim under the Equal Protection Clause of the Fourteenth Amendment, but fail to describe the nature of the equal protection claim or the applicable level of constitutional scrutiny.

---

[18] The Second Circuit has raised the concept of prospective, as-applied vagueness challenges.  See Copeland, 893 F.3d at 112.  In such challenges, the challenger seeks to demonstrate that the statute in question cannot be applied to a specific course of conduct that it intends to follow.  See id.  That is not the situation at hand.  Here, Plaintiffs, rather than identifying a narrow set of circumstances, seek sweeping relief that "more resembles a facial challenge than an as-applied challenge."  Id.

The Fourteenth Amendment's Equal Protection Clause provides that "No state shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.  This language "is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).  Differential treatment is the hallmark or *sine qua non* of an equal protection claim.  See Lamothe v. Town of Oyster Bay, No. 08-2078, 2012 WL 6720781, at *8 (E.D.N.Y. Dec. 27, 2012).  The level of scrutiny to evaluate the differential treatment turns on whether the challenged law interferes with a fundamental right or targets a suspect class.  See Orthodox Jewish Coal. of Chestnut Ridge v. Village of Chestnut Ridge, No. 19-443, 2021 WL 3605041, at *4 (S.D.N.Y. Aug. 13, 2021).  If the law does, strict scrutiny is triggered.  See id.  If not, the law will be upheld so long as the government can show a rational relationship between the differential treatment and a legitimate state purpose.  See id.

Presumably, Plaintiffs are arguing that Penal Law § 265.01-e(2)(c) targets a suspect class, namely religion.  Putting aside the fact that the Challenged Provision does not discriminate *among* religions[19], it has been held that when a law challenged under the Equal Protection Clause does not violate the right of free exercise of religion, it will be subject to only rational basis review.  See W.D. v. Rockland County, 521 F. Supp. 3d 358, 410 (S.D.N.Y. 2021).  As set forth above, Plaintiffs fail to assert a viable free exercise claim because the Challenged Provision does not burden religious activity.  Thus, Penal Law § 265.01-e(2)(c) would only have to withstand rational basis review to defeat Plaintiffs' equal protection claim.

Plaintiffs' claim, however, suffers from a more basic infirmity – they cannot make the threshold showing of differential treatment that is necessary to trigger *any* constitutional

---

[19] There is uncertainty whether strict scrutiny is applicable if a statute disadvantages religions generally. See id.

scrutiny. Plaintiffs contend that the Challenged Provision "singles out for different treatment persons engaging in religious activity from those who are not." Plaintiffs' Memo at 26. This argument takes a myopic look at the CCIA, and ignores the remainder of Penal Law § 265.01-e, which prohibits the possession of firearms in a litany of other "sensitive places" having no connection to religion or houses of worship. Thus, the CCIA does not single out religious activity for differential treatment and Plaintiffs cannot demonstrate that they have been treated differently from similarly situated individuals. In fact, as discussed in Section I(C)(2) of this memo, places of worship are treated *identically* to schools, polling places, and courthouses, each of which are quintessential American institutions that promote the exercise of constitutional rights therein. As such, Plaintiffs' equal protection attack on the Challenged Provision fares no better than the remainder of the claims addressed herein.

### POINT II

### PLAINTIFFS WOULD NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION

The existence of irreparable harm has been called the "single most important prerequisite for the issuance of a preliminary injunction." Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 234 (1998) (internal citation omitted). While courts generally presume that the loss of constitutional rights, even for a limited period of time, constitutes irreparable harm – thereby merging the first two elements of the standard into one – such a presumption results only after a plaintiff has shown a likelihood of success on the merits. See Jolly v. Coughlin, 76 F.3d 468, 482 (1996). As discussed above, Plaintiffs cannot demonstrate a likelihood of success on the merits, let alone, a substantial likelihood of success. Moreover, the alleged irreparable harm must be actual and imminent. See Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002). In this case, the harm is entirely remote and speculative. With respect

to Plaintiff Ornstein, no facts have been alleged demonstrating a credible threat of prosecution, and given his residency in Rockland County and the fact that he appears only to attend religious services in Rockland, the City Defendants would likely not have any jurisdiction to arrest and prosecute him.  As for Plaintiff Goldstein, the alleged irreparable harm is even more remote as he does not allege an intention to violate Penal Law § 265.01-e(2)(c).  Logically speaking, if one does not act in contravention of a statute, an arrest and subsequent prosecution is entirely theoretical, not to mention unlawful.

Because preliminary injunctions are predicated on urgency, a "delay in seeking the remedy suggests that the remedy is not really needed or that the harm is not really irreparable."  See Minzer v. Keegan, 97-4077, 1997 WL 34842191, at *6 (E.D.N.Y. Sept. 22, 1997) (internal citation omitted).  To be sure, a short delay does not necessarily bar the issuance of a preliminary injunction if a "good reason" caused the delay.  See Weight Watchers Int'l v. Luigino's, Inc., 423 F.3d 137, 144 (2d Cir. 2005).  But courts frequently decline to grant preliminary injunctions when plaintiffs unreasonably fail to seek injunctive relief in a timely manner.  See, e.g., Citibank, N.A. v. Citytrust, 756 F.2d 273, 276–77 (2d Cir. 1985) (ten-week delay); Hessel v Christie's Inc., 399 F. Supp. 2d 506, 521 (S.D.N.Y. 2005) (two-month delay); Richard A. Leslie Co. v. Birdie, LLC, 07-5933, 2007 WL 4245847, at *2 n.5 (S.D.N.Y. Nov. 26, 2007) (collecting cases).

In this case, Plaintiffs challenge the constitutionality of New York Penal Law § 265.01-e(2)(c). Governor Hochul signed the new legislation on July 1, 2022, to take effect on September 1, 2022. Plaintiffs waited to file their motion for a temporary restraining order and preliminary injunction until September 29, 2022 — roughly three months after the enactment of the new statute and more than a month beyond its effective date. By delaying their motion,

Plaintiffs have undermined their argument that they are faced with irreparable harm and entitled to the extraordinary remedy of a preliminary injunction. See Minzer, 1997 WL 34842191, at *6.

Because Plaintiffs waited to bring their request for injunctive relief until long after they were aware of the new statute, the Court should deny this motion.

## POINT III

### AN INJUNCTION IS NOT IN THE PUBLIC INTEREST

The Supreme Court's decision in Bruen resulted in the invalidation of a requirement that was in place for over one hundred years. While the decision was celebrated by some, it is likely to cause angst and fear for many others. The CCIA steps into the chasm of uncertainty created by the Bruen decision and addresses public safety concerns while respecting the holding and guidance of the Supreme Court. Bruen confirms that municipalities are not left with "both hands tied behind their back" with respect to the grave societal harm of gun violence. The Court's decision demanded fast action, an extraordinary session of the State Legislature was convened. The legislative product of that session is now the operative law of the State, and municipalities and public officials, along with their residents, have adapted to this new reality. The Challenged Provision bans the possession of firearms from our holiest and most solemn locations. Our elected officials determined that the possession of firearms is inappropriate in houses of worship, and Bruen provides them latitude to make that policy decision. It is not in the public interest for this court to substitute its judgment in the absence of a constitutional violation and upset the status quo.

## CONCLUSION

For all these reasons set forth herein, the court should deny Plaintiffs' motion for a preliminary injunction.

Dated:      New York, New York
              October 14, 2022

                                  Respectfully submitted,

                                  HON. SYLVIA O. HINDS-RADIX
                                  Corporation Counsel of the City of New York
                                  Attorney for City Defendants
                                  100 Church Street
                                  New York, New York 10007
                                  (212) 356-4036

                          By:                                  
                                  Nicholas Ciappetta (NC 1014)
                                  Assistant Corporation Counsel