UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN GOLDSTEIN individually and on behalf of
CONGREGATION BNEI MATISYAHU, and MEIR
ORNSTEIN,

|                                        | Plaintiffs, |
| -------------------------------------- | ----------- |

v.

KATHY HOCHUL, in her official capacity as Governor of the
State of New York; LETITIA JAMES, in her official capacity as
Attorney General of the State of New York; KEECHANT
SEWELL, in her official capacity as Commissioner of the New
York City Police Department; LOUIS FALCO, III, in his official
capacity as Rockland County Sheriff; ERIC GONZALEZ, in his
official capacity as the District Attorney of Kings County; and
THOMAS WALSH, II, in his official capacity as the District
Attorney of Rockland County,

Defendants.

No. 22-cv-8300 (VSB)

## STATE DEFENDANTS' MEMORANDUM OF LAW
## IN RESPONSE TO ORDER TO SHOW CAUSE

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

Matthew L. Conrad
Assistant Attorney General
Of Counsel

## Table of Contents

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

STANDARD OF REVIEW .................................................................................................4

ARGUMENT ....................................................................................................................5

    I.   GOVERNOR HOCHUL AND ATTORNEY GENERAL JAMES ARE NOT PROPER DEFENDANTS ...............................................................................................5

        A.   The Eleventh Amendment Bars This Suit Against the State Defendants ........................5

        B.   Plaintiffs Lack Standing to Bring This Suit Against Governor Hochul and Attorney General James ................................................................................................7

    II.  PLAINTIFFS CANNOT ESTABLISH A CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS ................................................................................9

        A.   Plaintiffs Can Only Bring a Disfavored Facial Challenge ................................................9

        B.   The Place of Worship Provision Does Not Violate the Second Amendment ................10

        C.   The Place of Worship Provision Does Not Violate the First Amendment ....................14

        D.   The Place of Worship Provision Does Not Violate Equal Protection ............................18

        E.   The Place of Worship Provision Is Not Unconstitutionally Vague ................................21

            1. Plaintiffs' Facial Vagueness Challenge Fails ................................................................21

            2. The Place of Worship Provision Survives a Vagueness Analysis ................................22

    III. PLAINTIFFS HAVE NOT SHOWN IRREPARABLE HARM ........................................24

    IV. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH IN FAVOR OF NEW YORK'S MISSION TO PROTECT ITS CITIZENS ............................................25

CONCLUSION ................................................................................................................27

## Table of Authorities

**Cases**                                                                      **Page(s)**

Able v. United States,
  44 F.3d 128 (2d Cir. 1995) ..............................................................................4

Alexander v. United States,
  509 U.S. 544 (1993) ......................................................................................18

Am. Commc'ns Ass'n, C.I.O. v. Douds,
  339 U.S. 382 (1950) ......................................................................................23

Andrews v. State,
  50 Tenn. 165 (Tenn. 1871) ............................................................................13

Antonyuk v. Hochul,
  22-cv-986 (N.D.N.Y.) ...................................................................................10

Ass'n of Home Appliance Mfrs. v. City of New York,
  36 F. Supp. 3d 366 (S.D.N.Y. 2014) ............................................................24

Beal v. Stern,
  184 F.3d 117 (2d Cir. 1999) ............................................................................4

Bill & Ted's Riviera, Inc. v. Cuomo,
  494 F. Supp. 3d 238 (N.D.N.Y. 2020) ............................................................4

Brache v. Westchester Cty.,
  658 F.2d 47 (2d Cir. 1981) ............................................................................21

Braunfeld v. Brown,
  366 U.S. 599 (1961) ......................................................................................16

Bronson v. Swensen,
  500 F.3d 1099 (10th Cir. 2007) .......................................................................7

Burke v. Verizon Commc'ns, Inc.,
  2020 WL 4741043 (S.D.N.Y. Aug. 17, 2020) ................................................6

C.L. for Urb. Believers v. City of Chicago,
  342 F.3d 752 (7th Cir. 2003) .........................................................................17

Cayuga Nation v. Tanner,
  824 F.3d 321 (2d Cir. 2016) ............................................................................8

Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,
  508 U.S. 520 (1993) ......................................................................................17

Citizens Union of City of New York v. Att'y Gen. of New York,
   2017 WL 2984167 (S.D.N.Y. June 23, 2017) ................................................................6

Congregation Beth Yitzchok of Rockland, Inc. v. Town of Ramapo,
   593 F. Supp. 655 (S.D.N.Y. 1984) .........................................................................16

Copeland v. Vance,
   893 F.3d 101 (2d Cir. 2018) ......................................................................... 21, 23

Cranley v. Nat'l Life Ins. Co. of Vt.,
   318 F.3d 105 (2d Cir. 2003) .......................................................................10

D.C. v. Heller,
   554 U.S. 570 (2008) ........................................................................ 1, 3, 11

Davis v. New York,
   316 F.3d 93 (2d Cir. 2002) ............................................................................5

Diaz v. Pataki,
   368 F. Supp. 2d 265 (S.D.N.Y. 2005) ...............................................................10

Dickerson v. Napolitano,
   604 F.3d 732 (2d Cir. 2010) ..........................................................................9

Doe v. N.Y.U.,
   666 F.2d 761 (2d Cir. 1981) ............................................................................4

Does 1 - 10 v. Suffolk Cnty., New York,
   2022 WL 2678876 (2d Cir. July 12, 2022) .........................................................8

eBay Inc. v. MercExchange, L.L.C.,
   547 U.S. 388 (2006) ......................................................................................25

Employment Division v.
   Smith, 494 U.S. 872 (1990) ...........................................................................15

English v. State,
   35 Tex. 473, 478-79 (Tex. 1873) ...................................................................13

Erznoznik v. Jacksonville,
   422 U.S. 205 (1975) .......................................................................................10

Ex parte Young,
   209 U.S. 123 (1908) ..........................................................................................5

F.C.C. v. Fox Television Stations, Inc.,
   567 U.S. 239 (2012) .......................................................................................24

Farrell v. Burke,
  449 F.3d 470 (2d Cir. 2006) ...................................................................................18

Frey v. Bruen,
  2022 WL 522478 (S.D.N.Y. Feb. 22, 2022)..........................................................24

Fulton v. City of Philadelphia
  141 S. Ct. 1868 (2021)...........................................................................................15

Gospel Missions of Am. v. City of Los Angeles,
  419 F.3d 1042 (9th Cir. 2005)................................................................................18

Grayned v. City of Rockford,
  408 U.S. 104 (1972)................................................................................................22

Greater Chautauqua Fed. Credit Union v. Marks,
  2022 WL 1266276 (S.D.N.Y. Apr. 28, 2022) ..........................................................7

Hill v. Colorado,
  530 U.S. 703 (2000)................................................................................................22

Hill v. State,
  53 Ga. 472 (Ga. 1874)............................................................................................13

Holder v. Humanitarian Law Project,
  561 U.S. 1 (2010) ...................................................................................................22

Hsu By & Through Hsu v. Roslyn Union Free Sch. Dist. No. 3,
  85 F.3d 839 (2d Cir. 1996) .....................................................................................19

In re Dairy Mart Convenience Stores, Inc.,
  411 F.3d 367 (2d Cir. 2005) .....................................................................................5

In re Navy Chaplaincy,
  323 F. Supp. 3d 25 (D.D.C. 2018) .........................................................................19

Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third and Fourth Departments,
  852 F.3d 178 (2d Cir. 2017) .....................................................................................9

Joglo Realties, Inc. v. Seggos,
  2016 WL 4491409 (E.D.N.Y. Aug. 24, 2016) ........................................................24

Katz v. New York City Hous. Pres. & Dev.,
  2022 WL 3156178 (S.D.N.Y. Aug. 8, 2022) ..........................................................17

Kelly v. New York State Civ. Serv. Comm'n,
  2015 WL 861744 (S.D.N.Y. Jan. 26, 2015).............................................................5

Kennedy v. Bremerton Sch. Dist.,
    142 S. Ct. 2407 (2022)...................................................................................................15

Kiryas Joel All. v. Vill. of Kiryas Joel,
    495 F. App'x 183 (2d Cir. 2012)...................................................................................19

Knife Rts., Inc. v. Vance,
    802 F.3d 377 (2d Cir. 2015) ...........................................................................................8

L&M Bus Corp. v. Bd. of Educ.,
    2018 WL 2390125, (E.D.N.Y. May 25, 2018) ...............................................................4

Li v. Lorenzo,
    712 F. App'x 21 (2d Cir. 2017)......................................................................................5

Libertarian Party of Erie Cnty. v. Cuomo,
    970 F.3d 106 (2d Cir. 2020) ...........................................................................................7

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (2013) ........................................................................................................7

Make the Rd. New York v. Cuccinelli,
    419 F. Supp. 3d 647 (S.D.N.Y. 2019)..........................................................................25

Marchi v. Bd. of Coop. Educ. Servs. of Albany,
    173 F.3d 469 (2d Cir. 1999) ...........................................................................................8

Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n,
    138 S. Ct. 1719 (2018)..................................................................................................15

Mendez v. Heller,
    530 F.2d 457 (2d Cir. 1976) ...........................................................................................6

NAACP v. Button,
    371 U.S. 415 (1963)......................................................................................................22

Nat'l Org. for Marriage, Inc. v. Walsh,
    714 F.3d 682 (2d Cir. 2013) ...........................................................................................8

Nken v. Holder,
    556 U.S. 418 (2009 .................................................................................................. 4, 25

NYSRPA v. Bruen,
    142 S. Ct. 2111 (2022).............................................................................................passim

NYSRPA v. Cuomo,
    804 F.3d 242 (2d Cir. 2015) .........................................................................................25

Otoe-Missouria Tribe v. New York State Dep't of Fin. Svcs.,
   769 F.3d 105 (2d Cir. 2014) ..................................................................................25

People ex. rel. Schneiderman v. Actavis PLLC,
   787 F.3d 638 (2d Cir. 2015) ....................................................................................4

People v. Gilmour,
   98 N.Y.2d 126 (N.Y. 2002) .....................................................................................7

Picard v. Magliano,
   42 F.4th 89 (2d Cir. 2022) .......................................................................................8

Rector, Wardens, & Members of Vestry of St. Bartholomew's Church v. City of New York,
   914 F.2d 348 (2d Cir. 1990) ..................................................................................16

Restaurant Law Ctr. v. City of N.Y.,
   360 F. Supp. 3d 192 (S.D.N.Y. 2019) .....................................................................9

Robertson v. Cuomo,
   524 F. Supp. 3d 196 (S.D.N.Y. 2021) ................................................................ 5, 6

Rubin v. Garvin,
   544 F.3d 461 (2d Cir. 2008) ..................................................................................23

Salinger v. Colting,
   607 F.3d 68 (2d Cir. 2010) ....................................................................................25

Seminole Tribe of Florida v. Florida,
   517 U.S. 44 (1996) ...................................................................................................5

Simon v. E. Ky. Welfare Rights Org.,
   426 U.S. 26 (1976) ...................................................................................................7

Spavone v. New York State Dep't of Corr. Servs.,
   719 F.3d 127 (2d Cir. 2013) ..................................................................................20

State Emps. Bargaining Agent Coal. v. Rowland,
   494 F.3d 71 (2d Cir. 2007) ......................................................................................5

State v. Reando
   (Mo. 1878) .............................................................................................................14

Suitum v. Tahoe Regional Planning Agency,
   520 U.S. 725 (1997) ...............................................................................................10

Susan B. Anthony List v. Driehaus,
   573 U.S. 149 (2014) ............................................................................................ 7, 8

Time Warner Cable v. Bloomberg L.P.,
    118 F.3d 917 (2d Cir. 1997) ........................................................................................24

Trinity United Methodist Par. v. Bd. of Educ. of City Sch. Dist. of Newburgh,
    907 F. Supp. 707 (S.D.N.Y. 1995) ..............................................................................23

Turley v. Giuliani,
    86 F. Supp. 2d 291 (S.D.N.Y. 2000) ...........................................................................24

U.S. v. Carolene Products Co.,
    304 U.S. 144 (1938) .....................................................................................................19

U.S. v. Decastro,
    682 F.3d 160 (2d Cir. 2012) ........................................................................................10

Ulrich v. Mane,
    383 F. Supp. 2d 405 (E.D.N.Y. 2005) ...........................................................................6

United States v. Coppola,
    671 F.3d 220 (2d Cir. 2012) ........................................................................................22

United States v. Salerno,
    481 U.S. 739 (1987) .....................................................................................................10

United States v. Thompson,
    896 F.3d 155 (2d Cir. 2018) ........................................................................................18

United States v. Williams,
    553 U.S. 285 (2008) .....................................................................................................23

Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,
    455 U.S. 489 (1982) ...............................................................................................21, 22

VIP of Berlin, LLC v. Town of Berlin,
    593 F.3d 179 (2d Cir. 2010) ........................................................................................23

W.D. v. Rockland Cnty.,
    521 F. Supp. 3d 358 (S.D.N.Y. 2021) .........................................................................20

Warden v. Pataki,
    35 F. Supp. 2d 354 (S.D.N.Y. 1999) .............................................................................6

Wash. State Grange v. Wash. State Republican Party,
    552 U.S. 442 (2008) .....................................................................................................10

We The Patriots USA, Inc. v. Hochul,
    17 F.4th 266 (2d Cir. 2021) .........................................................................................17

Winter v. Natural Res. Defense Council, Inc.,
  555 U.S. 7 (2008) ......................................................................................... 4, 25

**Statutes**                                                                                                    **Page(s)**

1870 Ga. Laws 421 ............................................................................................. 12

1870 Tex. Gen. Laws 63 ..................................................................................... 12

1877 Va. Acts 305 .............................................................................................. 12

1889 Ariz. Sess. Laws 16 ................................................................................... 12

1890 Okla. Stat. 495-96 ..................................................................................... 12

26 Hen. 8 c. 6 § 3 (1534) ................................................................................... 12

Ch. 371, 2022 N.Y. Laws § 25 ........................................................................... 24

New York Penal Law § 265.01-e ..................................................................passim

**Other Authorities**                                                                                          **Pages(s)**

Eric Ruben and Saul Cornell, Firearm Regionalism and Public Carry: Placing Southern Antebellum
  Case Law in Context, 125 Yale L.J. Forum 121 (2015) ....................................... 13

Defendants Kathy Hochul, sued in her official capacity as Governor of the State of New York, and Letitia James, sued in her official capacity as Attorney General of the State of New York (collectively with Governor Hochul, "State Defendants"), respectfully submit this memorandum of law, together with the Declaration of Patrick J. Charles, dated October 14, 2022 ("Charles Decl."), in response to this Court's Order to Show Cause as to why an order should not be issued enjoining the enforcement of New York Penal Law § 265.01-e(2)(c) during the pendency of this action (ECF no. 21) and in opposition to Plaintiffs' motion for a preliminary injunction (ECF no. 5).

## PRELIMINARY STATEMENT

Gun violence continues to plague the State of New York and our nation. A spate of mass shootings – at a grocery store in Buffalo, an elementary school in Uvalde, Texas, and a parade in Highland Park, Illinois – as well as everyday gun crimes and tragic accidental gun-related injuries and deaths make the stakes clear. Bruen recognized that states retain wide latitude to confront the regulatory challenges posed by modern firearms, including the ability to require licensing and to limit the possession of firearms in certain locations. To address the ongoing gun crisis and to comply with the Supreme Court's decision in NYSRPA v. Bruen, 142 S. Ct. 2111 (2022), the State of New York amended New York's existing gun laws in the Concealed Carry Improvement Act ("CCIA").

Among these provisions are restrictions on carrying weapons in multiple "sensitive locations" – places where the public is especially vulnerable, where critical governmental services are provided, or where persons exercise constitutional rights like voting. The Supreme Court has endorsed such laws as "presumptively lawful." Bruen, 142 S. Ct. at 2162 (Kavanaugh, J. concurring) (quoting D.C. v. Heller, 554 U.S. 570, 626-27 (2008). Religious institutions are one of a myriad of defined "sensitive locations," where the carrying of firearms is generally prohibited, and in fact religious institutions have long been considered one of the paradigmatic examples of a "sensitive place" where firearms may be restricted.

1

Plaintiffs seek to undermine this protection for religious worshippers provided by the CCIA, arguing that it infringes their rights under the Second and First Amendments and the Equal Protection Clause of the Fourteenth Amendment, and that it is unconstitutionally vague. But this motion for a preliminary injunction must fail. <u>First</u>, Plaintiffs' motion fails as against the State Defendants because Governor Hochul and Attorney General James are not proper defendants for the relief sought. <u>Second</u>, Plaintiffs possess no clear or substantial likelihood of success on the merits. There is a robust and clear historical tradition of states being permitted to prohibit weapons in religious institutions, and therefore the place of worship provision of the CCIA satisfies the Second Amendment inquiry laid out in <u>Bruen</u>. Despite Plaintiffs' cherry-picking attempt to focus on one provision of the statute in isolation from the broader statutory scheme, the challenged provision is part of a neutral and generally applicable law that does not specifically target religious institutions, and easily passes muster under the First Amendment Free Exercise Clause intermediate scrutiny inquiry. And the challenged provision does not violate the Equal Protection Clause of the Fourteenth Amendment, nor is it unconstitutionally vague. <u>Third</u>, Plaintiffs fail to establish imminent, irreparable harm – any harm to Plaintiffs absent an injunction is entirely speculative. On the other hand, the serious risk of irreparable harm to public safety and the possibility of regulatory chaos is real. <u>Finally</u>, the balance of equities and the public interest weigh overwhelmingly in favor of New York's mission to protect all New Yorkers from the plague of gun violence that has swept the country. Plaintiffs fail here by selectively pointing to the rare incidents they allege unrestrained gun possession would prevent, while ignoring the numerous harms that the proliferation of firearms is more likely to cause.

Accordingly, Plaintiffs' motion for a preliminary injunction should be denied.

## FACTUAL BACKGROUND

On July 1, 2022, the CCIA was passed by the New York State Legislature in special session, then promptly signed into law by Governor Kathy Hochul. The bill was specifically designed "to align

2

with the Supreme Court's recent decision in []Bruen" See Press Release, July 1, 2022, available at https://on.ny.gov/3BM6Hz7.

In Bruen, the Supreme Court found that a single provision of New York's gun licensing regime was unconstitutional: the provision that required an applicant to demonstrate "proper cause" to obtain a license to carry a concealed weapon. The Court held that requiring such a heightened, individualized need for self-defense to obtain a license violated the Second Amendment. See Bruen at 2123 n.1. The Court did not address any other provision of New York's gun licensing or related statutes.

The Sponsor's Memo of the CCIA bill makes it clear that the Legislature was set on complying with Bruen and securing the fundamental Second Amendment rights of all New Yorkers, while at the same time enacting measures to "prevent[] death and injury by firearms":

> The proposed legislation creates a new licensing procedure that satisfies the requirements set forth by the United States Supreme Court decision in New York State Rifle & Pistol Association, Inc., v. Bruen, et al. Notably, this replaces the "proper cause" requirements of New York's current conceal carry law, with a new set of requirements that protects individuals' Second Amendment rights as determined by the Supreme Court. Under this bill, applicants who successfully meet New York's conceal carry license applications requirements will receive their license.

See S51001 State Senate Sponsor Memo, https://www.nysenate.gov/legislation/bills/2021/S51001.

The revised law enumerated the vulnerable locations where guns do not belong, in keeping with "longstanding . . . laws forbidding the carrying of firearms in sensitive places," which are "presumptively lawful." Id. at 2162 (Kavanaugh, J., concurring) (quoting Heller, 554 U.S. at 626-27). Penal Law § 265.01-e(1) provides that "A person is guilty of criminal possession of a firearm, rifle or shotgun in a sensitive location when such person possesses a firearm, rifle or shotgun in or upon a sensitive location, and such person knows or reasonably should know such location is a sensitive location." Penal Law § 265.01-e(2) then provides an extensive list of sensitive locations, including "(c) any place of worship or religious observation" (the "Place of Worship Provision"). This law makes it a crime to bring a firearm into a synagogue, church, or other place of worship, with exceptions for

police officers, peace officers, registered security guards, and other persons designated in § 265.01-e(3).

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy never awarded as of right." <u>Winter v. Natural Res. Defense Council, Inc.</u>, 555 U.S. 7, 24 (2008). The movant bears the heavy burden of establishing each of the following elements: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. <u>Id.</u> at 20. The final two factors – the balance of the equities and the public interest – "merge when the Government is the opposing party." <u>L&M Bus Corp. v. Bd. of Educ.</u>, 2018 WL 2390125, at *13 (E.D.N.Y. May 25, 2018) (quoting <u>Nken v. Holder</u>, 556 U.S. 418, 435 (2009)).

In addition, the Second Circuit has "held the movant to a heightened standard" where, as here, an injunction is "mandatory" (<u>i.e.</u>, altering the status quo rather than maintaining it). <u>People ex. rel. Schneiderman v. Actavis PLLC</u>, 787 F.3d 638, 650 (2d Cir. 2015). In cases such as this one where a plaintiff asks the Court to enjoin a law passed by the Legislature and signed by the Governor, "[r]equiring such a heightened showing is consistent with the principle that 'governmental policies implemented through legislation . . . are entitled to a higher degree of deference and should not be enjoined lightly.'" <u>Bill & Ted's Riviera, Inc. v. Cuomo</u>, 494 F. Supp. 3d 238, 244 (N.D.N.Y. 2020) (quoting <u>Able v. United States</u>, 44 F.3d 128, 131 (2d Cir. 1995)). Plaintiffs must therefore show a "clear" or "substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm, in addition to showing that the preliminary injunction is in the public interest. <u>Actavis</u>, 787 F.3d at 650 (quoting <u>Beal v. Stern</u>, 184 F.3d 117, 123 (2d Cir. 1999) and <u>Doe v. N.Y.U.</u>, 666 F.2d 761, 773 (2d Cir. 1981)). Plaintiffs cannot meet this standard.

## ARGUMENT

### I.   GOVERNOR HOCHUL AND ATTORNEY GENERAL JAMES ARE NOT PROPER DEFENDANTS

As a threshold flaw in Plaintiffs' motion, the named State Defendants – Governor Hochul and Attorney General James – are not the proper defendants for the relief that Plaintiffs seek.

#### A.   The Eleventh Amendment Bars This Suit Against the State Defendants

The Eleventh Amendment prohibits lawsuits against a state without that state's unambiguous consent or an act of Congress. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54-55 (1996). This immunity "includes suits against state officials in their official capacities," like Governor Hochul and Attorney General James. Li v. Lorenzo, 712 F. App'x 21, 22 (2d Cir. 2017) (citing Davis v. New York, 316 F.3d 93, 101-02 (2d Cir. 2002)). Under the narrow exception to sovereign immunity set forth in Ex parte Young, 209 U.S. 123 (1908), a federal court may hear a suit against a state officer where the plaintiff seeks prospective relief based on an ongoing violation of federal law. State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007). For the exception to apply, "the state officer against whom a suit is brought 'must have some connection with the enforcement of the act.'" In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 372-73 (2d Cir. 2005) (quoting Young, 209 U.S. at 157). A general enforcement duty is insufficient; there must be some "particular duty" to enforce the law. Robertson v. Cuomo, 524 F. Supp. 3d 196, 223 (S.D.N.Y. 2021); see also Kelly v. New York State Civ. Serv. Comm'n, 2015 WL 861744, at *3 (S.D.N.Y. Jan. 26, 2015), aff'd, 632 F. App'x 17 (2d Cir. 2016).

Plaintiffs fail to establish that Governor Hochul and Attorney General James have a particular duty to enforce the Place of Worship Provision. They allege that Governor Hochul "is responsible for the execution and administration of the laws of the State of New York, and is responsible for the implementation and enforcement of the policies of the executive branch of the State of New York." Compl. at ¶ 10. But "Governor [Hochul]'s general duty to execute the laws is not sufficient to make

5

[her] a proper party." Robertson, 524 F. Supp. 3d at 223; see also Citizens Union of City of New York v. Att'y Gen. of New York, 2017 WL 2984167, at *4 (S.D.N.Y. June 23, 2017) (dismissing Governor as a defendant where he only had a "general duty to 'take care that the laws are faithfully executed'" (quoting N.Y. Const. art. IV, § 3)). Indeed, "the vast majority of courts to consider the issue have held . . . that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." Warden v. Pataki, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999) (collecting cases), aff'd sub nom. Chan v. Pataki, 201 F.3d 430 (2d Cir. 1999). Plaintiffs, perhaps to avoid this issue, also claim that Governor Hochul "is responsible for execution of Penal Law § 265.01-e(2)(c) . . . and has violated Plaintiffs' rights by the execution and implementation of that law." Compl. at ¶ 10. This is specious. Nowhere does the CCIA vest an enforcement duty in the Governor. Nowhere does it give her a role in its immediate implementation. Governor Hochul has only a "general duty" with regards to the CCIA – a duty insufficiently particular to fall within the Ex parte Young exception.

Attorney General James is also an improper defendant. Plaintiffs allege that she "is responsible for the enforcement of laws and prosecution of crimes throughout the State." Compl. at ¶ 11. While the Attorney General has an obligation to support the constitutionality of state laws and defend actions against the state, that general duty "does not provide a basis for bringing an action against [her]." Ulrich v. Mane, 383 F. Supp. 2d 405, 410 (E.D.N.Y. 2005) (quoting Mendez v. Heller, 530 F.2d 457, 460 (2d Cir. 1976)); see also Burke v. Verizon Commc'ns, Inc., 2020 WL 4741043, at *3 (S.D.N.Y. Aug. 17, 2020) (collecting cases demonstrating that "the NY AG is not a required party to an action challenging the constitutionality of a New York law for which the NY AG has no particularized enforcement power"), report and recommendation adopted, 2020 WL 6538748 (S.D.N.Y. Nov. 6, 2020). Moreover, Plaintiffs do not, and cannot, allege that Attorney General James has a particular duty to enforce the Place of Worship Provision. The Attorney General lacks plenary jurisdiction to criminally prosecute all violations of the Penal Law, and the CCIA does not grant her special

enforcement authority. See People v. Gilmour, 98 N.Y.2d 126, 131 (N.Y. 2002) ("The Attorney-General has no . . . general authority to conduct prosecutions and is without any prosecutorial power except when specifically authorized by statute") (cleaned up). Accordingly, the Ex parte Young exception is inapplicable to Governor Hochul and Attorney General James, and the action must be dismissed against them.

**B.      Plaintiffs Lack Standing to Bring This Suit Against Governor Hochul and Attorney General James**

For similar reasons, the suit against Governor Hochul and Attorney General James should be dismissed for lack of both causation and injury, which along with redressability are Article III's requirements for standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (2013). The causation requirement demands that an alleged injury "can be [fairly] traced to the challenged action of the defendant." Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41 (1976). For pre-enforcement challenges to a statute's constitutionality, "the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." Greater Chautauqua Fed. Credit Union v. Marks, 2022 WL 1266276, at *8 (S.D.N.Y. Apr. 28, 2022) (quoting Bronson v. Swensen, 500 F.3d 1099, 1110 (10th Cir. 2007)); see also Libertarian Party of Erie Cnty. v. Cuomo, 970 F.3d 106, 122 (2d Cir. 2020) (upholding the dismissal of the Governor and Attorney General for lack of standing where they had no role in administering the challenged statute), cert. denied, 141 S. Ct. 2797 (2021), abrogated in part on other grounds by Bruen. As discussed, neither Governor Hochul nor Attorney General James have a direct role in enforcing Place of Worship Provision. They are therefore improper defendants.

Moreover, there is no injury to complain of, and this case must therefore fail on the intertwined grounds of ripeness and standing. See Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 n.5 (2014) (noting that, in pre-enforcement challenge, "the Article III standing and ripeness issues . . . boil down to the same question" (internal quotation marks and citation omitted)); Nat'l Org. for Marriage, Inc.

v. Walsh, 714 F.3d 682, 688 (2d Cir. 2013) ("Often, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing."). The injury element of standing requires an allegation of "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Susan B. Anthony List, 573 U.S. at 159. Ripeness similarly requires "some credible fear of enforcement." Marchi v. Bd. of Coop. Educ. Servs. of Albany, 173 F.3d 469, 479 (2d Cir. 1999).

Accordingly, to satisfy both injury-in-fact and ripeness, Plaintiffs must demonstrate that they have an intention to perform arguably proscribed conduct and that there is a "credible threat [of prosecution] sufficient to satisfy the imminence requirement." Does 1 - 10 v. Suffolk Cnty., New York, 2022 WL 2678876, at *2 (2d Cir. July 12, 2022). Whether there is a "credible threat . . . depends on the particular circumstances at issue." Knife Rts., Inc. v. Vance, 802 F.3d 377, 384 (2d Cir. 2015). In making this analysis, courts have considered whether there is a "history of past enforcement . . . against the same conduct," Susan B. Anthony, 573 U.S. at 164, whether the plaintiff has "already been arrested" under the challenged law, Picard v. Magliano, 42 F.4th 89, 100 (2d Cir. 2022); Knife Rts., Inc., 802 F.3d at 385-86, whether the defendant has "announced its intention to enforce the [law] against [the plaintiffs]," Cayuga Nation v. Tanner, 824 F.3d 321, 331 (2d Cir. 2016), and whether the conduct plaintiffs intend to engage in is "clearly prohibited" by the challenged law, id. Here, the totality of the circumstances does not suggest that there is a credible threat of prosecution. In their pleadings, Plaintiffs do not allege that they have yet been subject to an enforcement action, nor do they point to a threat of enforcement against them. They do not even cite a single generalized threat of enforcement; all they point to is a single press release issued by the Governor that says nothing about how the CCIA is to be enforced. This is insufficient to establish ripeness and standing.

## II.   PLAINTIFFS CANNOT ESTABLISH A CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

In their motion for a preliminary injunction, Plaintiffs bring four claims. They allege that the Place of Worship Provision violates (1) the Second Amendment; (2) the First Amendment Free Exercise Clause; (3) the Fourteenth Amendment proscription against vague laws; and (4) the Fourteenth Amendment's Equal Protection Clause. Plaintiffs cannot demonstrate a clear or substantial likelihood of success on the merits of any of these claims.

### A.   Plaintiffs Can Only Bring a Disfavored Facial Challenge

Plaintiffs purport to bring both a facial and an as-applied challenge to the Place of Worship Provision. See Compl. at 24. However, they cannot bring an as-applied challenge to a statute that has never been applied to them. A long line of precedent within the Second Circuit establishes that any "pre-enforcement" challenge to a state law, defined as one brought "before [any plaintiffs] have been charged with any violation of law," can only be brought as a facial challenge. Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third and Fourth Departments, 852 F.3d 178, 184 (2d Cir. 2017); accord Restaurant Law Ctr. v. City of N.Y., 360 F. Supp. 3d 192, 208 (S.D.N.Y. 2019). Plaintiffs fail to allege that any governmental actor has ever charged them (or will ever charge them) with violating the CCIA.

That leaves Plaintiffs' facial challenge remaining. With respect to Plaintiffs' Second Amendment, First Amendment, and Equal Protection claims,[1] not only are "[f]acial challenges . . . generally disfavored" by courts, Dickerson v. Napolitano, 604 F.3d 732, 741 (2d Cir. 2010), but a facial challenge to the provisions of a statute can succeed only if Plaintiffs "show that 'no set of circumstances exists under which the [statute] would be valid, i.e., that the law is unconstitutional in all of its applications,' or at least that it lacks a 'plainly legitimate sweep.'" U.S. v. Decastro, 682 F.3d

---

[1] A somewhat different standard applies in the vagueness context, discussed infra.

160, 168 (2d Cir. 2012) (quoting <u>Wash. State Grange v. Wash. State Republican Party</u>, 552 U.S. 442, 449 (2008)); <u>see also</u> <u>United States v. Salerno</u>, 481 U.S. 739 (1987)). Moreover, it is black-letter law that the New York State courts must be given the opportunity to narrow the provisions of the CCIA, if necessary, during the course of specific enforcement activities or judicial proceedings. <u>See</u> <u>Erznoznik v. Jacksonville</u>, 422 U.S. 205, 216 (1975) ("[A] state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts"). Because of this, "[a] plaintiff making a facial claim faces an uphill battle because it is difficult to demonstrate that mere enactment of a piece of legislation violates the plaintiff's constitutional rights." <u>Cranley v. Nat'l Life Ins. Co. of Vt.</u>, 318 F.3d 105, 110 (2d Cir. 2003) (quoting <u>Suitum v. Tahoe Reg'l Plan. Agency</u>, 520 U.S. 725, 736 n.10 (1997)) (cleaned up); <u>see also</u> <u>Diaz v. Pataki</u>, 368 F. Supp. 2d 265, 274 (S.D.N.Y. 2005) (same).

### B.    The Place of Worship Provision Does Not Violate the Second Amendment

The heart of Plaintiffs' motion is their claim that the Place of Worship Provision violates their Second Amendment right to bear arms. However, this provision is consistent with a long and robust history of government prohibitions on firearms in sensitive places, and in places of worship specifically. In <u>Bruen</u>, the Supreme Court instructed that a restriction on the carrying of firearms will comport with the Second Amendment if it is "consistent with this Nation's historical tradition of firearm regulation." <u>Bruen</u>, 142 S. Ct. at 2126. The Court explained that reasoning by analogy, comparing modern regulations to historical analogues, would be required and appropriate. <u>Id.</u> at 2132. Here, review of such analogues reveals that the historical record contains a broad and well-established body of laws restricting the carrying of weapons in religious institutions. The Place of Worship Provision clearly satisfies the <u>Bruen</u> "historical tradition" test.[2]

---

[2] On October 6, 2022, Judge Suddaby of the Northern District of New York issued a temporary restraining order (currently administratively stayed by the Second Circuit) in the matter <u>Antonyuk v. Hochul</u>, 22-cv-986 (N.D.N.Y.), enjoining much of the CCIA, including many of the sensitive place

As an initial matter, there is no serious dispute that the government can prohibit firearms in "sensitive places." Prohibitions on the carrying of guns in vulnerable places are explicitly contemplated in the Supreme Court's firearms jurisprudence. In Heller, the decision announcing the authoritative interpretation of the Second Amendment, the Court declared that "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" were "presumptively lawful." 554 U.S. at 626-27 & n. 26. The Court re-emphasized the constitutionality of such laws in Bruen, declaring that "we are [] aware of no disputes regarding the lawfulness of such prohibitions." 142 S. Ct. at 2133. In fact, the constitutionality of restrictions on guns in sensitive places appears to have been critical to the formation of the Bruen majority: writing for himself and Chief Justice Roberts, Justice Kavanaugh emphasized that "the Second Amendment allows a variety of gun regulations," before excerpting Heller's sensitive places language in full, including the statement that such measures are "presumptively lawful," then writing, "with those additional comments, I join the opinion of the Court." Id. at 2162 (Kavanaugh, J., concurring). See also Charles Decl. ¶¶ 14-16 (explaining the early history of sensitive place regulations).

There is a robust record of state laws restricting firearms in religious institutions, establishing that such regulations are "deeply rooted" in American society. In the years directly following the passage of the Fourteenth Amendment,[3] multiple states passed laws explicitly and directly prohibiting

---

restrictions. While the State disagrees with that opinion and has appealed it to the Second Circuit, it is notable that the Place of Worship Provision was among the few provisions that Judge Suddaby upheld as constitutional under the Second Amendment. Analyzing the historical record, Judge Suddaby held that "it is permissible for New York State to generally restrict concealed carry in 'any place of worship or religious observation,'" with the caveat that the provision must be construed as permitting an exception for those "who have been tasked with the duty to keep the peace at the place of worship or religious observation." Id., slip op. at 32-35. This admonition is largely duplicative of Penal Law § 265.01-e(2)(c), which exempts from the "sensitive place" restrictions certain persons including police officers, peace officers, and registered security guards.

[3] The Supreme Court in Bruen disclaimed that it was weighing whether the period around 1791 (when the Second Amendment was ratified) or around 1868 (when the Fourteenth Amendment,

the carrying of firearms in religious institutions.[4] For example, in 1870, Texas passed a law providing that "if any person shall go into any church or religious assembly . . . and shall have about his person . . . fire-arms, whether known as a six-shooter, gun, or pistol of any kind, such person so offending shall be deemed guilty of a misdemeanor[.]" 1870 Tex. Gen. Laws 63, Charles Decl. ¶ 18 & Ex. H. That same year, Georgia provided that "no person in said State of Georgia be permitted or allowed to carry about his or her person any . . . pistol or revolver, or any kind of deadly weapon, to any . . . place of public worship[.]" 1870 Ga. Laws 421, Charles Decl. ¶ 18 & Ex. I. In 1874, Missouri passed a law mandating fines or imprisonment "[i]f any person shall carry concealed, upon or about his person, any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship." Charles Decl. ¶ 17 n.5 & Ex. J (1883 act increasing fines). In 1877, Virginia proscribed "carrying any gun, pistol, . . . or other dangerous weapon, to any place of worship while a meeting for religious purposes is being held at such place[.]" 1877 Va. Acts 305, Charles Decl. ¶ 18 & Ex. K. Arizona continued this tradition in 1889. 1889 Ariz. Sess. Laws 16, Charles Decl. ¶ 18 & Ex. L. ("If any person shall go into any church or religious assembly . . . and shall have or carry about his person a pistol or other firearm . . . he shall be punished . . . and shall forfeit to the County the weapon or weapons so found on his person.") The territory of Oklahoma followed in 1890. 1890 Okla. Stat. 495-96, Charles Decl. ¶ 18 & Ex. M ("It shall be unlawful for any person, except a peace officer, to carry into any church or religious assembly . . . any of the weapons designated in sections one and two of this article.").[5] In addition to these state statutes, municipalities across the nation also

---

incorporating the Second Amendment against the states, was ratified) is more relevant to the historical analysis. Bruen, 142 S. Ct. at 2138. Rather, the Court gave consideration to laws passed during both periods. Id. at 2136-56.

[4] Similar laws have existed for centuries. See, e.g., 26 Hen. 8 c. 6 § 3 (1534) (no one may bring a "handgun" or "any other manner of weapon," to "any town, church, fair, market, or other congregation" within Wales).

[5] Notably, these statutes are in addition to the substantial number of states that did not need to pass

enacted prohibitions on firearms in places of worship. Charles Decl. ¶ 17 & Exs. E, G (describing the prohibitions of weapons in places of worship enacted in Charlotte, NC; Columbia, MO; Webb City, MO; and Stockton, KS).

In addition to these statutes passed in the wake of Reconstruction, state courts at the time also made clear that governments could prohibit firearms in religious institutions – and often opined that it would be absurd if they could not or did not. In 1871, the Tennessee Supreme Court held that "a man may well be prohibited from carrying his arms to church, or other public assemblage, as the carrying them to such places is not an appropriate use of them." Andrews v. State, 50 Tenn. 165, 182 (Tenn. 1871). In 1873, the Texas Supreme Court announced that "[w]e confess it appears to us little short of ridiculous, that any one should claim the right to carry upon his person any of the mischievous devices inhibited by the statute, into a peaceable public assembly, as, for instance, into a church, a lecture room, a ball room, or any other place where ladies and gentlemen are congregated together." English v. State, 35 Tex. 473, 478-79 (Tex. 1873).[6] In 1874, the Georgia Supreme Court held that "[t]he practice of carrying arms at courts, elections and places of worship, etc., is a thing so improper in itself, so shocking to all sense of propriety, so wholly useless and full of evil, that it would be strange if the framers of the constitution have used words broad enough to give it a constitutional guarantee." Hill v. State, 53 Ga. 472, 475 (Ga. 1874). And in 1878, the Missouri Supreme Court upheld the

---

laws specifically prohibiting weapons in places of worship during this time period, because they already had on their books broad prohibitions of public carry. See, e.g., Charles Decl. ¶ 17 n.4 (listing numerous municipalities' 19th-century prohibitions of public carry); id. at ¶ 18 (describing Tennessee's 1689 prohibition on the carrying of dangerous weapons into "any election…fair, race course, or other public assembly of the people."); Eric Ruben and Saul Cornell, Firearm Regionalism and Public Carry: Placing Southern Antebellum Case Law in Context, 125 Yale L.J. Forum 121, 132-33 (2015) (noting that states including Massachusetts, Wisconsin, Maine, Michigan, Virginia, Minnesota, Oregon, and Pennsylvania passed laws beginning in the 1830s broadly regulating public carrying of firearms).

[6] The Supreme Court, in Bruen, described English as an "outlier" on the question of whether it evinced a historical tradition of a "proper cause" requirement for public carry. However, the Court did not speak on the utility of English on the question of sensitive place restrictions, and in tandem with the other cited cases and statutes, it is unquestionably aligned with the public consensus at the time.

constitutionality of the state's law prohibiting concealed firearms in, inter alia, "any church or place where people have assembled for religious worship," describing the law as "nothing more than a police regulation, made in the interest of peace and good order, perfectly within the power of the legislature to make." State v. Reando (Mo. 1878), Charles Decl. ¶ 17 n.5 & Ex. N. The court also noted that similar laws had been upheld by the courts of Georgia, Louisiana, Alabama, Arkansas, and Texas. Id.

In the face of the overwhelming evidence that the United States has a robust historical tradition of excluding firearms from houses of worship, Plaintiffs point to several statutes dating from 1632, 1643, and 1770, that took the opposite tack, requiring citizens to carry weapons in houses of worship. Plaintiffs' reliance on these laws not only fails, but undermines their own point. First, these statutes pre-date the adoption of the Constitution, the Second Amendment, or the Fourteenth Amendment, and are thus of limited or no utility under Bruen. Second, many of these laws were enacted for the explicit purpose of enforcing slavery and protecting against slave uprisings. Charles Decl. ¶ 21-22. If any American "historical tradition" has been constitutionally repudiated and must no longer serve as a historical basis for considering modern-day firearms laws, it is this one. And to the extent that these laws do retain any relevance, it is to demonstrate that, from the earliest days of settlement of what would become the United States, it was considered within the government's power to regulate the usage of firearms in religious institutions. Id.

In totality, the body of state and municipal statutes and cases firmly establishes that there is a clear "historical tradition" – even among those states that had more permissive firearms laws – of restricting firearms in houses of worship. Accordingly, the Place of Worship Provision easily satisfies Bruen's requirements.

### C.      The Place of Worship Provision Does Not Violate the First Amendment

Plaintiffs next contend that the Place of Worship Provision violates the Free Exercise Clause of the First Amendment. The crux of Plaintiffs' argument is that the Place of Worship Provision is

targeted at religious practice and is not a neutral law of general applicability. But Plaintiffs' argument fails for multiple reasons – they do not allege that the law affects a religious practice; and, cherry-picked readings of the CCIA aside, fail to establish that the law in question is not a neutral, generally applicable provision.

The controlling authority as to a free exercise claim remains the seminal case Employment Division v. Smith, in which the Court held that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." 494 U.S. 872, 879 (1990) (cleaned up); see also Fulton v. City of Philadelphia, 141 S. Ct. 1868, 1877 (2021) (declining to overrule Smith); Kennedy v. Bremerton Sch. Dist., 142 S. Ct. 2407, 2422 (2022) (citing Smith). Subsequent cases have provided additional color to this rule: the government "cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n, 138 S. Ct. 1719, 1721-22 (2018). And a policy is not generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way, or if it provides a mechanism for individualized exemptions." Kennedy, 142 S. Ct. at 2422 (cleaned up; quoting Fulton). A statute that is not a "neutral law of general applicability" is subject to strict scrutiny. Id.

The initial burden to demonstrate that a statute is not a "neutral law of general applicability" is borne by Plaintiffs. See id. at 2421. Plaintiffs fail to carry that burden. First, and fatally to Plaintiffs' claims, Plaintiffs fail to allege that the Place of Worship Provision actually burdens any religious practice. The Free Exercise Clause prohibits burdens on "sincere religious practice." E.g., id. at 2411. Plaintiffs state that they would like to carry or permit congregants to carry firearms during their religious practice, but they do not allege that carrying a firearm is itself an element of their religious

15

practice. To the contrary, Plaintiffs argue only that they would like to carry a firearm for personal safety reasons. While Plaintiffs may genuinely feel safer carrying a firearm while practicing their religion, this does not make carrying the firearm a part of the religious practice itself, which is what the Free Exercise Clause protects. See Braunfeld v. Brown, 366 U.S. 599, 605 (1961) (upholding Sunday closing laws where "the statute at bar does not make unlawful any religious practices of appellants; the Sunday law simply regulates a secular activity"); Congregation Beth Yitzchok of Rockland, Inc. v. Town of Ramapo, 593 F. Supp. 655, 659 (S.D.N.Y. 1984) (in a challenge to municipal regulations allegedly interfering with a synagogue's operation of a religious school, explaining that "where, as here, the law simply regulates a secular activity and, as applied to plaintiff, operates so as to make more practically difficult the practice of its religion . . . the burden on religion must be viewed as relatively less onerous"); Rector, Wardens, & Members of Vestry of St. Bartholomew's Church v. City of New York, 914 F.2d 348, 355 (2d Cir. 1990) ("The central question in identifying an unconstitutional burden is whether the claimant has been denied the ability to practice his religion or coerced in the nature of those practices."). Whether the right of self-defense has been inappropriately burdened is the province of the Second Amendment (discussed supra); the Smith test and the First Amendment Free Exercise Clause is simply not the correct lens through which to view this case.

Second, even if Plaintiffs' bearing of firearms could appropriately be considered a religious practice, Plaintiffs fail to establish that the Place of Worship Provision is not a neutral, generally applicable law. Plaintiffs, in challenging Penal Law § 265.01-e(2)(c), conspicuously ignore the existence of subsections e(2)(a)-(b) and (d)-(t), which prohibit the carrying of firearms in a variety of other sensitive locations, including but not limited to schools, public parks, homeless shelters, public transit, polling places, and theaters. Plaintiffs' cherry-picking of the statutory language does not change the fact that the Place of Worship Provision is but one discrete item on an extensive list of sensitive locations as defined by the CCIA, and that therefore the law cannot in any sense be said to be

"targeting" religion. To the contrary, the list contains multiple types of facilities that pose similar risks but exist for secular purposes, including schools, theaters, concert venues, and conference centers, and the CCIA does not treat houses of worship any differently from those. See We The Patriots USA, Inc. v. Hochul, 17 F.4th 266, 284 (2d Cir. 2021), cert. denied, 142 S. Ct. 2569 (2022) (upholding COVID-19 vaccination requirement without a religious exemption as "generally applicable" where it was not shown that the requirement failed to equally regulate comparable secular conduct); C.L. for Urb. Believers v. City of Chicago, 342 F.3d 752, 763 (7th Cir. 2003) (zoning provision that named churches as a land use requiring specific approval did not violate the First Amendment where it was "just one among many and varied religious and nonreligious regulated uses").

This is not the sort of "targeted" law that the Free Exercise Clause prohibits. A violative law is one that constitutes an "official expression[] of hostility to religion." Katz v. New York City Hous. Pres. & Dev., 2022 WL 3156178, at *4 (S.D.N.Y. Aug. 8, 2022) (upholding apartment occupancy limits against a claim that Plaintiffs' religious beliefs required them to have a large family). Plaintiffs here make no allegation that the CCIA was passed out of "hostility" to religious beliefs, or is intended to delegitimize their practices. To the contrary – while Plaintiffs may certainly disagree that it will have the intended effect, it would be difficult to deny that if anything, the Place of Worship Provision was intended to protect religious worshippers and practice, not to exhibit hostility towards them. Under the test laid out by Smith and its progeny, the Place of Worship Provision easily passes muster.[7]

---

[7] Even if the Place of Worship Provision was not a neutral, generally applicable law, it would still be valid under the strict scrutiny analysis, under which "a law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 546 (1993) (cleaned up). New York indisputably has a compelling purpose of the highest order in the protection of its citizens from gun violence in houses of worship, and prohibiting firearms in such locations – with exceptions for police officers, security guards, and other authorized personnel – is narrowly tailored to advance that interest. As discussed infra, not all gun violence takes the form of targeted mass shootings; spontaneous violence and accidental injuries and deaths inevitably resulting from ubiquitous weapons possession

Finally, Plaintiffs briefly gesture at the overbreadth doctrine of the First Amendment, which addresses statutes that proscribe properly forbidden speech, but also sweep within their coverage protected speech. Plaintiffs' initial problem with this argument is that overbreadth is a doctrine relating primarily to the First Amendment <u>speech</u> clauses, and occasionally to associational activity – it does not extend to the religion clauses. <u>Gospel Missions of Am. v. City of Los Angeles</u>, 419 F.3d 1042, 1051 (9th Cir. 2005) (noting that "the 'overbreadth' doctrine generally encompasses only freedom-of-speech challenges" and declining to extend it to a free exercise case); <u>see also</u> <u>Alexander v. United States</u>, 509 U.S. 544, 555 (1993) ("The 'overbreadth' doctrine, which is a departure from traditional rules of standing, permits a defendant to make a facial challenge to an overly broad statute <u>restricting speech</u>") (emphasis added); <u>United States v. Thompson</u>, 896 F.3d 155, 163 (2d Cir. 2018) ("Notably, overbreadth doctrine has developed primarily in the context of laws that include within their ambit a substantial amount of <u>speech</u> protected by the First Amendment.") (emphasis in original). In any event, even were overbreadth a doctrine that existed in this context, "to prevail on an overbreadth challenge, the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." <u>Farrell v. Burke</u>, 449 F.3d 470, 499 (2d Cir. 2006) (cleaned up). Plaintiffs' brief argument that the Place of Worship Provision is overbroad neglects any discussion of <u>how</u> the provision is overbroad, or to what extent they contend it covers protected versus unprotected activity. Like the rest of Plaintiffs' First Amendment claim, this perfunctory argument fails.

### D.   The Place of Worship Provision Does Not Violate Equal Protection

---

is also a problem that the government has the duty to address. For the purpose of the First Amendment analysis, in a sensitive location such as a religious institution, there is no narrower way to prevent such violence than by ensuring that only trained individuals specifically tasked with protecting the community are armed.

Plaintiffs next contend that the Place of Worship Provision violates the Equal Protection Clause of the Fourteenth Amendment. Alleged in a single paragraph of their preliminary injunction brief, Plaintiffs' argument misses the mark. "To state a religion-based claim under the Equal Protection Clause, plaintiffs must plausibly allege that a government actor intentionally discriminated against them on the basis of their religion." Kiryas Joel All. v. Vill. of Kiryas Joel, 495 F. App'x 183, 189 (2d Cir. 2012). Plaintiffs fail this test from the start, as they cannot show that the Place of Worship Provision draws any class distinctions in the first place. The Place of Worship Provision, by its terms, regulates a specific activity in a certain category of sensitive locations. It applies to all people present in those places, and has no effect on anyone outside of those places; it does nothing to regulate the conduct of a "person engaging in religious activity" based on that status. In short, Plaintiffs do not even allege the existence of a class cognizable under the equal protection analysis.

Moreover, even if "persons engaging in religious activity" was a cognizable identity-based class, the Equal Protection Clause's consideration of religion is concerned with impermissible distinctions between religions. See Hsu By & Through Hsu v. Roslyn Union Free Sch. Dist. No. 3, 85 F.3d 839, 869 (2d Cir. 1996) (explaining that "[t]reating one religion differently than another" is considered invidious under the Equal Protection Clause); see also In re Navy Chaplaincy, 323 F. Supp. 3d 25, 41 (D.D.C. 2018), aff'd, 2020 WL 11568892 (D.C. Cir. Nov. 6, 2020) (to evaluate a religion-based equal protection claim, "the Court must first determine whether the challenged selection-board policy on its face prefers any religious denomination") (cleaned up). Plaintiffs, however, apparently posit that their class is "persons engaging in religious activity," as compared to "those who are not." PI Memo at 26. Plaintiffs do not suggest how this can be considered a protected class under the Equal Protection Clause, or cite any caselaw suggesting that it is such. Cf. U.S. v. Carolene Products Co., 304 U.S. 144, 153 n.4 (1938) (explaining that the Equal Protection Clause affords increased judicial scrutiny to laws that affect "discrete and insular minorities."). This is because, again, "persons engaging in

religious activity" is not an identity-based class at all. Whether "persons engaging in religious activity" are being hindered in that practice without reference to their specific religion is a question for First Amendment review, not equal protection analysis. (Tellingly, one of Plaintiffs' only case citations in this section is to <u>Smith</u>, rather than to any equal protection case.)

Even if this case presented an appropriate question for equal protection review, the most that Plaintiffs could get out of an equal protection claim is rational basis review. See, e.g., <u>W.D. v. Rockland Cnty.</u>, 521 F. Supp. 3d 358, 410 (S.D.N.Y. 2021) ("Plaintiffs allege intentional discrimination based on their religion, and therefore, that they belong to a suspect class. However, where a law subject to an equal protection challenge does not violate a plaintiff's right of free exercise of religion, courts do not apply to the challenged classification a standard of scrutiny stricter than the traditional rational-basis test.") (cleaned up).

The Place of Worship Provision easily satisfies rational basis review. "When a party challenges a government classification that does not involve a suspect class or burden fundamental rights, courts apply rational basis scrutiny. The classification will be constitutional so long as there is any reasonably conceivable state of facts that could provide a rational basis for the classification." <u>See</u> <u>Spavone v. New York State Dep't of Corr. Servs.</u>, 719 F.3d 127, 136 (2d Cir. 2013) (cleaned up). Here, there is no reasonable dispute that protecting New Yorkers from gun violence is a legitimate government interest, and that prohibiting guns in sensitive places such as houses of worship promotes that interest. To the extent that the Place of Worship Provision could conceivably be construed as drawing any distinctions between classes of people (it is not), the protection of sensitive places provides a rational basis for any such class.

In sum, the Place of Worship Provision restricts the right to possess a firearm in certain locations and during certain activities, regardless of who is present. It does not do so because Plaintiffs are Jewish, or because they are religious. And, as discussed <u>supra</u>, it does this alongside numerous

restrictions applicable to similar non-religious places and activities. Plaintiffs' afterthought of an equal protection argument is meritless.

### E.   The Place of Worship Provision Is Not Unconstitutionally Vague

Plaintiffs allege that a portion of the Place of Worship Provision – specifically the "religious observation" language – is so vague as to violate the Fourteenth Amendment's Due Process Clause. PI Memo at 24-26. As explained <u>supra</u>, Plaintiffs lack standing to bring an unripe as-applied challenge. Interpreted as a facial challenge, they fall short of the rigorous standard governing such a claim. And either way, if this Court subjected the law to a vagueness analysis, the law would survive.

#### 1.   <u>Plaintiffs' Facial Vagueness Challenge Fails</u>

As discussed <u>supra</u>, Plaintiffs' challenge is in substance a facial one. <u>See</u> <u>Copeland v. Vance</u>, 893 F.3d 101, 112 (2d Cir. 2018) ("[T]heir vagueness challenge would, if successful, disable the entire statute. The challenge thus more resembles a facial challenge than an as-applied challenge."). To succeed on a facial vagueness challenge, Plaintiffs must show "a statute is so fatally indefinite that it cannot constitutionally be applied to anyone." <u>Id.</u>, 893 F.3d at 110. If there is even a single application of the statute that is not vague, the challenge fails. <u>See</u> <u>Brache v. Westchester Cty.</u>, 658 F.2d 47, 50 (2d Cir. 1981) ("A statute is unconstitutionally vague on its face <u>only</u> when it cannot validly be applied to <u>any</u> conduct." (emphasis added)); <u>Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 497 (1982).[8]

The Place of Worship Provision plainly has applications that are not vague, defeating Plaintiffs' argument. The statute prohibits possessing a firearm, rifle, or shotgun in "any place of worship or religious observation" – language that unambiguously includes synagogues and other places of

---

[8] As discussed <u>supra</u>, Plaintiffs lack standing to bring an unripe as-applied challenge. Particularly in the vagueness context, where Plaintiffs take issue with the "religious observation" language, Plaintiffs fail to allege that there is a credible threat that they will be prosecuted for possessing a firearm while engaging in religious practices at home or otherwise outside of synagogue.

worship. Plaintiffs know this, too. They recognize that the statute is a "restraint on . . . attending synagogue" with a firearm, never once asserting that this prohibition is vague. PI Memo at 8, 13. Plaintiff Ornstein himself recognizes that he "cannot under any circumstances possess a firearm at a shul." Ornstein Decl. at ¶ 20; see also id. at ¶ 11 ("Under the new law, I am prohibited from carrying my handgun while on Zemach David's property, or the property of any shul for that matter."). Because there are applications that are not vague, Plaintiffs' claim that the statute applies unclearly to other religious activity, even if it were true, is irrelevant.[9]

2.    The Place of Worship Provision Survives a Vagueness Analysis

Even if Plaintiffs did have standing to bring an as-applied challenge or if they could conceivably bring a facial challenge, the Place of Worship Provision would survive. The Due Process Clause's void-for-vagueness doctrine only invalidates laws if they violate one of two tests: "First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000). This is a flexible analysis, not a strict mathematical standard. Grayned v. City of Rockford, 408 U.S. 104, 110 (1972); United States v. Coppola, 671 F.3d 220, 235 (2d Cir. 2012) ("[The vagueness] test does not demand meticulous specificity in the identification of proscribed conduct." (internal quotation marks and citation omitted)).

---

[9] Plaintiffs apparently suggest that the approach to a facial vagueness challenge might be different in the First Amendment context. See PI Memo at 25. While some courts have applied a different vagueness standard for some First Amendment rights, the Supreme Court has recently questioned the existence of this special approach. See Holder v. Humanitarian Law Project, 561 U.S. 1, 20 (2010) (suggesting that a special vagueness rule for First Amendment claims would make the doctrine "substantially redundant" with overbreadth). Second, to the extent a heightened vagueness standard exists, it applies when free speech, not free exercise, is implicated. See, e.g., NAACP v. Button, 371 U.S. 415, 432 (1963); Hoffman Estates, 455 U.S. at 499 ("If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.").

The Place of Worship Provision passes the vagueness test. The first step's central inquiry is "whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." VIP of Berlin, LLC v. Town of Berlin, 593 F.3d 179, 187 (2d Cir. 2010) (quoting Rubin v. Garvin, 544 F.3d 461, 467 (2d Cir. 2008)). It is a "test of common sense." Rubin, 544 F.3d at 469. This law is sufficiently clear. A person of ordinary intelligence would understand that a firearms ban in "place[s] of worship or religious observation" would include synagogues, churches, and mosques while excluding homes, backyards, and streets. Indeed, this Court has held that "[t]he terms 'religious purpose' and 'religious services and religious instruction' have a common meaning such that people of ordinary intelligence – perhaps after some thought – can understand what conduct is prohibited." Trinity United Methodist Par. v. Bd. of Educ. of City Sch. Dist. of Newburgh, 907 F. Supp. 707, 718 (S.D.N.Y. 1995). The fact that there are hypothetical edge cases does not render a law unconstitutionally vague. See Am. Commc'ns Ass'n, C.I.O. v. Douds, 339 U.S. 382, 412 (1950) ("There is little doubt that imagination can conjure hypothetical cases in which the meaning of these terms will be in nice question. The applicable standard, however, is not one of wholly consistent academic definition of abstract terms."). The law survives this "test of common sense."

Nor does the second step pose a hurdle. To be impermissibly vague, a statute must "invite[] arbitrary enforcement" and include a "totally subjective element." Copeland, 893 F.3d at 120. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." United States v. Williams, 553 U.S. 285, 306 (2008). This law has an objective standard: whether a place is one of worship or religious observation. It is not "totally subjective." At times, it may be difficult to prove that a given place falls within the definition's ambit. But the difficulty of proving a fact has no weight in this analysis. See F.C.C. v. Fox Television Stations, Inc., 567 U.S. 239,

253 (2012) ("[A law] is not vague because it may at times be difficult to prove an incriminating fact but rather because it is unclear as to what fact must be proved."). Thus, while this question need not be reached, the statute is not unconstitutionally vague.[10]

## III.   PLAINTIFFS HAVE NOT SHOWN IRREPARABLE HARM

"In the Second Circuit ... [the] presumption of irreparable harm arising from a constitutional deprivation is not automatic." Joglo Realties, Inc. v. Seggos, 2016 WL 4491409, at *16 (E.D.N.Y. Aug. 24, 2016). Instead, "[b]ecause the violation of a constitutional right is the irreparable harm asserted [], the two prongs of the preliminary injunction threshold merge into one" and "in order to show irreparable injury, plaintiff must show a likelihood of success on the merits." Frey v. Bruen, 2022 WL 522478, at *9 (S.D.N.Y. Feb. 22, 2022) (quoting Turley v. Giuliani, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000)).

Moreover, the Second Circuit has held that it "often will be more appropriate to determine irreparable injury by considering what adverse factual consequences the plaintiff apprehends if an injunction is not issued, and then considering whether the infliction of those consequences is likely to violate any of the plaintiff's rights." Time Warner Cable v. Bloomberg L.P., 118 F.3d 917, 924 (2d Cir. 1997). Thus, the alleged violations of Plaintiffs' constitutional rights, by themselves, are not sufficient to show irreparable harm. Plaintiffs' hypothesized potential harms do not satisfy this requirement. Plaintiffs claim that they will "either be deterred from exercising their First Amendment right to

---

[10] Additionally, even if the Court were to hold that the "religious observation" portion of the Place of Worship Provision was unconstitutionally vague (or was defective under any other ground alleged by Plaintiffs), the rest of the law – both the "places of worship" half of Penal Law § 265.01-e(2)(c) and the remainder of the CCIA – would remain valid and enforceable, both because of the strong preference for severability under New York State law and because of "the presence of a broad severability clause" in the statute. Ass'n of Home Appliance Mfrs. v. City of New York, 36 F. Supp. 3d 366, 377 (S.D.N.Y. 2014); see Ch. 371, 2022 N.Y. Laws § 25 ("If any clause, sentence, paragraph or section of this act shall be adjudged by any court of competent jurisdiction to be invalid, the judgment shall not affect, impair, or invalidate the remainder thereof . . . .").

worship freely, or . . . be rendered more vulnerable to violent attack[.]" But Plaintiffs have made no claim that carrying weapons is an inherent part of their religious beliefs; there is nothing actually preventing Plaintiffs from engaging in their right or ability to practice their religion.

Moreover, Plaintiffs ignore that they have options for protection of their congregation beyond unregulated private carry. The CCIA's sensitive place provisions contain exceptions for multiple classes of persons, permitting, inter alia, active and retired police officers, peace officers, and security guards to carry firearms in sensitive locations. Penal Law § 265.01-e(3). During the pendency of this proceeding, there is nothing preventing Plaintiffs from engaging an appropriate person to serve in this role, or by having a willing and appropriately trained congregant serve as a registered security guard.

## IV.   THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH IN FAVOR OF NEW YORK'S MISSION TO PROTECT ITS CITIZENS

Finally, the balance of equities and considerations of the public interest weigh heavily against Plaintiffs. "As the Supreme Court reaffirmed in Winter, a plaintiff seeking a preliminary injunction must demonstrate not just that they have some likelihood of success on the merits and will suffer irreparable harm absent an injunction, but also that the balance of the equities tips in his favor and an injunction is in the public interest." Otoe-Missouria Tribe v. N.Y.S. Dep't of Fin. Svcs., 769 F.3d 105, 112 n.4. (2d Cir. 2014) (cleaned up). "These factors merge when the Government is the opposing party." Make the Rd. N.Y. v. Cuccinelli, 419 F. Supp. 3d 647, 665 (S.D.N.Y. 2019) (citing Nken, 556 U.S. at 435). Further, the reviewing court must ensure that the "public interest would not be disserved" by the issuance of the injunction. Salinger v. Colting, 607 F.3d 68, 80 (2d Cir. 2010) (citing eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).

Here, "it is beyond cavil" that there is a "substantial, indeed compelling, governmental interest[] in public safety and crime prevention." NYSRPA v. Cuomo, 804 F.3d 242, 261 (2d Cir. 2015). In addressing the equities, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555

U.S. at 24 (internal quotation marks and citation omitted). Here, any prejudice to Plaintiffs from the denial of a preliminary injunction is outweighed by the benefit to the public. The State Defendants certainly are not ignorant of the history of attacks on Jewish houses of worship that Plaintiffs recite, and do not doubt that Plaintiffs' fear of violence is genuine, but they have not provided evidence to show that their proposed solution – permitting all congregants to worship armed – will enhance congregants' safety. While Plaintiffs have an understandable fear of mass shootings, pre-planned mass shootings are not the only form of violence that can affect congregants; in addition, broad legal carrying of deadly weapons in dense congregate settings can result in spontaneous, unplanned violence even by otherwise law-abiding citizens, or in accidental shootings leading to injuries or deaths. For example, when one of the parties is armed, a dispute over cell phone use in a movie theater can escalate into unnecessary death.[11] Or a shouting match at a bowling alley can turn into a shooting.[12] Or at a club.[13] Or in grocery stores and bars.[14] And, even at places of worship.[15]

Mass shootings are emblematic of the epidemic of violence plaguing the United States, but day-to-day violence between individuals, often spontaneous and in the heat of the moment, kills

---

[11]   See   https://www.nytimes.com/2022/02/26/us/curtis-reeves-murder-trial-acquitted.html.   The shooter was acquitted of second-degree murder because a jury determined that he acted in self-defense in response to a bag of popcorn being thrown at him.

[12]   See   https://www.pleasantonweekly.com/news/2022/07/16/three-people-shot-at-granada-bowl-in-livermore; https://www.npr.org/2019/01/05/682499047/three-dead-after-fight-escalates-into-shooting-at-california-bowling-alley.

[13]   See   https://abc6onyourside.com/news/local/triple-shooting-columbus-refugee-road-weyburn-road-9-5-2021.

[14]   See https://abcnews.go.com/US/wireStory/argument-leads-fatal-shooting-checkout-line-grocery-82708061.

[15]   See https://www.washingtonpost.com/news/acts-of-faith/wp/2016/05/05/parishioner-shot-to-death-in-church-during-hymns-was-only-armed-with-his-bible-police-say/. ("'It is clear the shooter brought a gun to a crowded church, he introduced that gun into a verbal altercation that turned into a fistfight and then fired the gun twice, aiming at the vital part of the body, killing the victim,' Montgomery County District Attorney Kevin Steele said[.]").

Americans daily as well.[16] Likewise, a substantial number of gun-related injuries and deaths are caused by accidental shootings.[17] It is the duty of the government to decide how to balance these threats. In seeking relief in the form of enjoining the Place of Worship Provision, Plaintiffs focus only on half of this equation, ignoring the public consequences that are equally or more likely to result from the unchecked carrying of deadly weapons in sensitive locations. This balancing of the equities requires that Plaintiffs' request for a preliminary injunction be denied.

## <u>CONCLUSION</u>

For the reasons set forth above, the State Defendants respectfully request that the Court deny Plaintiffs' motion for a preliminary injunction.


Dated:  New York, New York
        October 14, 2022


                                        LETITIA JAMES
                                        Attorney General
                                        State of New York


                                   By:  /s/ Matthew L. Conrad
                                        MATTHEW L. CONRAD
                                        Assistant Attorney General
                                        28 Liberty Street
                                        New York, NY 10005
                                        (212) 416-6352
                                        Matthew.Conrad@ag.ny.gov

---

[16] See https://www.everytown.org/issues/mass-shootings/ (noting that between 2009 and 2020, 1,363 people were killed in mass shootings in the U.S.); https://www.gunviolencearchive.org/ (noting that every year between 2014 and 2020, there were between approximately 12,000 and 19,000 total willful, malicious, or accidental gun deaths in the U.S.).

[17] See https://injepijournal.biomedcentral.com/articles/10.1186/s40621-019-0220-0.