```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
STEVEN GOLDSTEIN individually and on                       :
behalf of CONGREGATION BNEI                                :
MATISYAHU, and MEIR ORNSTEIN,                              :
                                                           :           22-CV-8300 (VSB)
                                        Plaintiffs,        :
                                                           :                 ORDER
                                                           :
                    -against-                              :
                                                           :
KATHY HOCHUL, in her official capacity as                  :
Governor of the State of New York; LETITIA                 :
JAMES, in her official capacity as Attorney                :
General of the State of New York;                          :
KEECHANT SEWELL, in her official                           :
capacity as Commissioner of the New York                   :
City Police Department; LOUIS FALCO, III,                  :
in his official capacity as Rockland County                :
Sheriff; ERIC GONZALEZ, in his official                    :
capacity as the District Attorney of Kings                 :
County; and THOMAS WALSH, II, in his                       :
official capacity as the District Attorney of              :
Rockland County.                                           :
                                                           :
                                        Defendants.        :
                                                           :
-----------------------------------------------------------X
```

VERNON S. BRODERICK, United States District Judge:

Plaintiffs filed this action by filing a Verified Complaint on September 29, 2022. (Doc. 1.) On that same day, Plaintiffs Steven Goldstein individually and on behalf of congregation Bnei Matisyahu, and Meir Ornstein filed a proposed order to show cause requesting, among other things, a temporary restraining order ("TRO") enjoining Defendants Governor Kathy Hochul, Attorney General Letitia James, Commissioner Keechant Sewell, Sheriff Louis Falco, III, District Attorney Eric Gonzalez, and District Attorney Thomas Walsh, II from enforcing Penal Law § 265.01-e(2)(c). (Doc. 4.) Because Plaintiffs fail to show immediate and irreparable

1

injury sufficient to satisfy the stringent requirements for a temporary restraining order, I denied Plaintiffs' motion for a temporary restraining order without prejudice on October 3, 2022. (Doc. 21.) In that same order I directed the "defendants show cause . . . on October 28, 2022 at 10:00 a.m. . . . why an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining defendants during the pendency of this action from enforcing Penal Law 265.01-e(2)(c)." (*Id.*) I ordered Defendants to file an opposition and Plaintiffs to file a reply in advance of the order to show cause hearing. State Defendants filed their opposition on October 14, 2022, (Doc. 38), City Defendants filed their opposition on October 14, 2022, (Doc. 37), and Plaintiffs filed their reply on October 24, 2022. (Doc. 49.) It is hereby

ORDERED that Plaintiffs Goldstein and Ornstein provide the Court with copies of their New York firearm licenses.

IT IS FURTHER ORDERED that the parties should be prepared to discuss, among other things, the following questions:

1. When did Plaintiff Goldstein obtain his license to "possess a firearm on the premises of Congregation Bnei Matisyahu's synagogue."? (Declaration of Steven Goldstein ("Goldstein Declaration") ¶ 5.) Prior to obtaining his firearm license, did Plaintiff Goldstein participate in religious activities at Bnei Matisyahu or attend shul at another location, and if yes, how frequently?

2. When did Plaintiff Ornstein obtain his license to carry a concealed handgun? (Declaration of Ornstein ("Ornstein Declaration") ¶ 3.) Prior to obtaining his firearm license, did Plaintiff Ornstein attend or participate in religious activities at Congregation Zemach David of Dinev, and if yes, how frequently?

3. In paragraph 13 of his declaration Plaintiff Ornstein states that he "no longer attend[s]

Zemach David or any other shul with as much frequency as I did before the law went into effect." (Ornstein Declaration ¶ 13.)

    a. How frequently did Plaintiff Ornstein attend Congregation Zemach David of Dinev ("Congregation Zemach") prior to September 1, 2022? After Plaintiff Ornstein obtained his firearm license and prior to September 1, 2022, how frequently did Plaintiff Ornstein carry his firearm in Congregation Zemach? After Plaintiff Ornstein obtained his firearm license and after September 1, 2022, how frequently did Plaintiff Ornstein carry his firearm in Congregation Zemach?

    b. How frequently has Plaintiff Ornstein attend Congregation Zemach after September 1, 2022?

    c. How frequently did Plaintiff Ornstein attend other shuls prior to September 1, 2022? After Plaintiff Ornstein obtained his firearm license and prior to September 1, 2022, how frequently did Plaintiff Ornstein carry his firearm in other shuls? After Plaintiff Ornstein obtained his firearm license and after September 1, 2022, how frequently did Plaintiff Ornstein carry his firearm in other shuls?

4. In paragraph 21 of his declaration Plaintiff Goldstein states that he "no longer attend[s] Bnei Matisyahu with as much frequency as [he] did before the law went into effect." (Goldstein Declaration ¶ 21.)

    a. How frequently did Plaintiff Goldstein attend Congregation Bnei Matisyahu ("Bnei Matisyahu") prior to September 1, 2022? After Plaintiff Goldstein obtained his firearm license, did he carry a firearm each time he attended Bnei

   Matisyahu prior to September 1, 2022?  If not, how many times did he not carry his firearm during this time period?

   b. How frequently did Plaintiff Goldstein attend Bnei Matisyahu after September 1, 2022?  Did he ever carry a firearm when he attended Bnei Matisyahu after September 1, 2022?

   c. After obtaining his firearm license but before September 1, 2022, did Plaintiff Goldstein attend any shuls other than Bnei Matisyahu?  If so, approximately how many times did he attend other shuls, and did he carry a firearm each time?

5. Has Plaintiff Goldstein attended Bnei Matisyahu since it opened approximately 11 years ago.  (Goldstein Declaration ¶ 4.)  If not, when did he begin attending?

6. When did Congregation Zemach open?  When did Plaintiff Ornstein begin attending Congregation Zemach?

7. In paragraph 43 of the Verified Complaint Plaintiffs claim that "Congregation Bnei Matisyahu is a membership-based Jewish congregation composed of approximately 25 families".  How many adults are members of Bnei Matisyahu?

8. In paragraph 43 of the Verified Complaint Plaintiffs claim that Congregation Bnei Matisyahu's existence depends on the contributions of its members.  Does Bnei Matisyahu receive contributions or donations from individuals or entities that are not members of the Congregation?

9. Are Plaintiffs arguing that places of worship do not have the right to exclude individuals who are carrying firearms?  In other words, are Plaintiffs arguing that individuals have the right to a concealed weapon in every place of worship?

    a. Since Plaintiff Goldstein obtained a license to carry a weapon, has he gone to any other places of worship other than Bnei Matisyahu?  If so, did he carry a weapon?

    b. Since Plaintiff Ornstein obtained a license to carry a weapon, has he gone to any other places of worship other than Congregation Zemach?  If so, did he carry a weapon?

10. Since Plaintiff Goldstein obtained a license to carry a weapon does he carry a gun whenever he leaves his home?  If not, why not?

11. Since Plaintiff Ornstein obtained a license to carry a weapon does he carry a gun whenever he leaves his home?  If not, why not?

12. What specific terms do Plaintiffs allege are vague in the statute at issue?

13. Are Plaintiffs arguing that I cannot apply the principles of statutory construction to determine the meaning of the terms contained in the statute at issue?

    a. Do Plaintiffs claim that every time someone says a prayer in a place, it becomes a place of worship?  Does a student saying a prayer in school make it a place of worship?  Wouldn't this have serious Establishment Clause implications?

    b. Do Plaintiffs claim that every time someone says a prayer in a place, it becomes a place of religious observation?

14. How do Defendants define a place of religious observation?

    a. Is there case law that Defendants can point to that support Defendants' definition of place of religious observation?

    b. Do Defendants claim that a place of religious observation has a common

   meaning?

15. Prior to September 1, 2022, did any other members of Bnei Matisyahu carry firearms in Bnei Matisyahu?

16. Prior to September 1, 2022, did any other members of Congregation Zemach carry firearms in Congregation Zemach?

17. Does the statute at issue prevent the Plaintiffs from practicing their religion? In other words, is carrying a firearm part of Plaintiffs' religious worship?

18. Are Plaintiffs arguing that concealed carry of a firearm is an integral part of practice of their religion? In other words, are Plaintiffs arguing that carrying a gun is akin to taking communion for Catholics, or the "important religious traditions in the Orthodox Jewish faith" that can only be done in person? *See, Roman Cath. Diocese of Brooklyn v. Cuomo*, 208 L. Ed. 2d 206, 141 S. Ct. 63, 68 (2020). If so, how is carrying a gun akin to communion?

19. In *Roman Cath. Diocese of Brooklyn v. Cuomo*, cited by Plaintiffs, the regulation at issue restricted the number of congregants allowed into a "house of worship" to the lesser of 10 people, or 25% of occupancy. Is Plaintiff arguing that not being allowed to concealed carry a gun to service is akin to the Government numerically restricting the number of people who are allowed into a house of worship?

20. City Defendants have stated that there may be individuals that are fearful of going to their houses of worship because they are fearful of attending service where any person is permitted to concealed carry a firearm. If feeling safe at your place of worship is the litmus test for barriers to practice of religion, is allowing concealed carry inside a church potentially violative of some religious individual's right to free

exercise?

21. The Supreme Court in *New York State Rifle & Pistol Association Inc. v. Bruen*, 142 S.Ct. 2111 (2022), stated that "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id*. at 2126.

   a. Is the "historical tradition of firearm regulation" static or can it or did it evolve?

   b. Did the Second Amendment apply to all people in the United States when it was passed?  Did the Second Amendment apply to all people in the United States when the Fourteenth Amendment was passed?

   c. Was the Second Amendment interpreted as applying to all religions at the time it was passed?  Was the Second Amendment interpreted as applying to all religions at the time the Fourteenth Amendment was passed?

   d. Defendants cite a variety of laws, statutes, and instances of firearm regulation that they argue show a "historical tradition of firearm regulation."  Plaintiffs make the argument in their reply brief that the only laws, cases, statutes or ordinances that I should consider are those that existed close to 1791.  Given that in *Bruen,* the Court states in formulating the historical test, they looked to

history and found that the Second Amendment "codified a right inherited from our English Ancestors" and upon surveying English History dating from the late 1600s, that the Second Amendment conferred an individual right to keep and bear arms, why do Plaintiffs state in their reply that the only laws, cases, statutes or ordinances that I should consider be those that existed close to 1791 and not prior?

22. Given that the Supreme Court in *Bruen* states that 18-19th Century laws regarding gun restrictions in legislative assemblies, polling places, and courthouses are adequate to satisfy its historical analysis, why does Plaintiff state on page 5 of their reply brief that the only applicable law that this Court should consider be "laws, cases, statutes or ordinances" that existed close to 1791?

SO ORDERED.

Dated: October 27, 2022
       New York, New York

Vernon S. Broderick
United States District Judge